364 A.2d 660
**COMMONWEALTH of Pennsylvania**
v.
**Steven CRAWFORD, Appellant.**

Supreme Court of Pennsylvania.

Argued May 6, 1975.

Decided Oct. 8, 1976.

566

William C. Costopoulos, Lemoyne, for appellant.

Marion E. MacIntyre, 2nd Asst. Dist. Atty., Reid H. Weingarten, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

On September 18, 1974, a jury found appellant, Steven Crawford, guilty of murder in the first degree for the September 12, 1970 killing of John Eddie Mitchell.

Post-verdict motions were denied and this appeal followed.

On September 13, 1970, John Eddie Mitchell, then age 13, was found beaten to death in a garage owned by appellant's father. The victim had left his home at about noon on the previous day to turn in money he had collected from his paper route, and had not returned. At that time he was with appellant, then age 14. The next day a neighbor found a sledge hammer, covered with what he suspected to be blood, in an open garage in the neighborhood. The police were called, and they searched all of the garages in the area. During the course of this search, appellant told police that there was no need to search his father's garage because it contained only an old car. Shortly afterward, the victim's body was discovered lying in a pool of blood partially beneath one of the two cars in appellant's father's garage.

Death was caused by blows from a blunt instrument, consistent with the blood covered sledge hammer, between 12:00 p. m., and 1:30 p. m., on September 12, 1970. It was also established that appellant's father owned a sledge hammer similar to the one found covered with blood, and that this hammer had been beneath the front porch of appellant's home on the day before the killing. A few hairs, identical to the victim's hair, were also recovered from the hammer. A prosecution witness testified that appellant was in the area of the garage with another boy at about the time of the murder. This witness, however, could not identify the other boy as the victim. Three partial palm prints, identified as being those of the appellant, were found on a light colored station wagon parked in the garage next to the car under which the victim's body was found. The prints were on the left side of the car, facing the body of the victim and immediately above it. Blood had also been splattered on the left side of this car. Two of the prints were found to have blood on them. The blood was identified as being

of human origin, but the quantity was so small, four or five pinheads, that it could not be typed and compared to the victim's blood. The prosecution's expert witness testified that this blood was on the hand when it left the print on the car. This witness also testified that, in his opinion, the three partial palm prints identified as belonging to appellant were placed on the car at the time of the killing. No other evidence was produced to establish that appellant was inside the garage at the time of the killing.

Appellant first contends that the charges against him should be dismissed because of a prejudicial delay between the time that the crime was committed, September 12, 1970, and the time that appellant was charged, February 13, 1974. He claims that the delay denied him a fair trial by making it impossible for him to establish an alibi defense for a certain day almost four years earlier. He also contends that there was no justification for the delay in prosecution.

Appellant relies primarily on *Commonwealth v. DeRose,* 225 Pa.Super. 8, 307 A.2d 425 (1973), and on *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed. 2d 468 (1971). In *Marion,* the Supreme Court stated that the statute of limitations is not the only yardstick against which the time between a crime and an indictment should be measured. The court, however, declined to decide the question of under what circumstances a delay in charging an individual would constitute a denial of due process.

The court in *DeRose,* supra, dismissed an indictment against the defendant because of a twenty-two (22) month delay in bringing charges against him. The defendant had been charged with bribery and corrupt solicitation of a police officer. The court reasoned that such a period of delay, during which the accused had no knowledge of the charges against him, coupled with the prosecution's inability to set the exact date on which the

attempted bribe was offered, operated to handicap the defendant's ability to prepare his defense.

In those cases the courts looked to the prosecution's justification for the delay and compared it with the prejudice to the defendant.  Here the case was very difficult to solve because of the scientific and circumstantial nature of much of the evidence.  Three different police officers worked on identifying the eighteen (18) possibly identifiable sets of prints found on the cars.  The first two officers spent 100–125 hours unsuccessfully trying to identify the prints.  The third spent between 200 and 300 hours working with the prints before he was able to make a positive identification of one of the prints on September 22, 1972.  Two and one-half months later, a second print was positively identified.  The third print was not positively identified until July, 1974, five months after appellant's arrest.  Time was also spent taking the first two prints to the Royal Canadian Mounted Police in an effort to determine whether the foreign substance which had been identified as human blood could be typed.  More time was spent unsuccessfully trying to scientifically date the prints.

Appellant claims that this delay prejudiced his case because after the passage of four years he is unable to establish an alibi defense.  This case, however, differs from those relied upon by appellant in one very significant respect.  Here appellant was not approached and asked to explain what he was doing on a particular date which he would, if innocent as presumed, have no reason to remember.  Appellant was well aware of the crime because he was present when the body was found.  He was questioned and fingerprinted on that same day, and was questioned again approximately two weeks later.  At this time he refused to take a polygraph examination.  Although appellant's refusal to take a polygraph examination is irrelevant to the issue of guilt, it is relevant to the question of whether he had reason to know that he was a

suspect in this case. Furthermore, appellant testified at trial, and specifically stated where he had been on that day, at what times he was doing certain things, who he was doing them with, and what people had said in his presence. Because of the difficulty that the police encountered in putting together the facts of this case and because appellant had been put on notice at the time of the murder that he was a suspect, we find no denial of due process.

■ Appellant next contends that the evidence was insufficient to sustain the conviction. We have reviewed the record and conclude that, accepting as true all of the prosecution's evidence, and all the reasonable inferences to be drawn from it, upon which the jury could have based its verdict, the evidence is sufficient to prove beyond a reasonable doubt that appellant is guilty of the crime charged. *Commonwealth v. Burton,* 450 Pa. 532, 301 A.2d 599 (1973), *Commonwealth v. Stukes,* 435 Pa. 535, 257 A.2d 828 (1969).

■ We agree with appellant's next argument, however, that the opinion testimony concerning the time at which appellant's palm prints were left on the car parked in appellant's father's garage should not have been admitted into evidence. We therefore reverse the judgment of sentence and remand for a new trial.

Appellant argues that the opinion given by the prosecution's fingerprint expert that appellant's palm prints had been placed on the car at the time of the murder was erroneously admitted into evidence and should have been stricken upon motion of defense counsel. Officer Walter Simpson, a fingerprint expert, testified to certain observations he had made concerning the partial prints found on the side of the car in the garage. He first stated that the three partial palm prints were identical to appellant's palm print. He also testified that in his opinion the foreign matter on the palm print, later identified as blood

of human origin, was on the hand that left the print on the car. This opinion, he explained, was based on the manner in which the foreign matter appeared on the print. The manner in which the blood appeared negated the possibility that the foreign matter was already on the surface of the car when the hand was placed on it, and also negated the possibility that the foreign matter was placed on the print after the print was left on the car. Simpson testified that the blood appeared only on the ridges of the print and not in the valleys. He stated that had the hand print been placed on the car over the blood, a smeared print would have resulted, and blood would have appeared in the valleys of the print. He also testified that had the blood spattered onto a previously made print, it would have caused the ridges to dissolve when hit by the blood, and would have left a distorted print.

Appellant admits Officer Simpson's qualifications as an expert in the lifting and identifying of prints. On cross-examination, however, defense counsel attempted to show that it was scientifically impossible to determine when the prints were left on the car. Officer Simpson admitted that scientifically there was no way to "date" the prints, but went on to say, over strenuous defense attempts to stop him, that in his opinion "the foreign matter that was found and finally analyzed had to be placed there during or about the time of the commission of the crime." In an effort to repair the damage, defense counsel attempted to show that this statement was pure conjecture:

"Q. Your expertise lies in lifting and identifying prints, isn't that right?

A. That is right, sir.

Q. This opinion you just gave doesn't fall within that realm of expertise, does it?

A. *No, sir.*

Q. Scientifically speaking, disregarding your opinion, but speaking scientifically, there is no way you could date that print?

A. This is as the information that was given to us in Washington, you are right." (Emphasis added.)

Upon further questioning, Officer Simpson admitted that the Bureau of Alcohol, Tax and Firearms, in Washington, D.C., had told him that there was no way in which the prints could be dated, and that this Bureau was one of the most reputable in the world for working with this type of information. Nevertheless, on re-direct examination Officer Simpson repeated his opinion that appellant's prints were placed on the car at or about the time of the killing. Defense counsel then moved that the opinion be stricken, and that the jury be instructed to disregard it. The trial court rejected the motion.

Appellant contends that this opinion constitutes an invasion of the function of the jury, and that Officer Simpson by his own admission was not qualified to give this opinion. The trial court felt that the dating of the prints was beyond the competence of the jury and that expert testimony was therefore admissible. In this respect, the trial court is correct. "Expert testimony is admissible . . . when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience." *Commonwealth v. Leslie*, 424 Pa. 331, 227 A.2d 900 (1956); *Commonwealth v. Nasuti*, 385 Pa. 436, 443, 123 A.2d 435, 438 (1956). The problem in this case is that the testimony was also beyond the range of the training, knowledge, intelligence, and experience of the prosecution's expert witness. Officer Simpson admitted that his expertise was limited to the field of lifting and identifying prints, and also admitted that this opinion was beyond the realm of that expertise. An expert may express his opinion only on matters which are within his or her scientific training and experience. *Commonwealth v. Bruno*, 324

Pa. 499, 188 A. 327 (1936). We thus conclude that this testimony was inadmissible, and that appellant's motion to have it stricken from the record with appropriate instructions to the jury should have been granted.

Judgment of sentence is reversed and a new trial is granted.