435 A.2d 148

COMMONWEALTH of Pennsylvania

v.

**Louis Cecil SCHROTH, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 10, 1981.

Decided July 10, 1981.

Reargument Denied Sept. 28, 1981.

562

Spero T. Lappas, Harrisburg, for appellant.

William A. Behe, Deputy Dist. Atty., Harrisburg, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

Appellant, Louis Cecil Schroth, was convicted in the Court of Common Pleas of Dauphin County of murder of the first degree. No post-verdict motions were filed and appellant was sentenced to life imprisonment. Appellant then filed a direct appeal to this Court, and we remanded for a determination of whether appellant had knowingly and intelligently waived his right to file post-verdict motions. *Commonwealth v. Schroth*, 458 Pa. 233, 358 A.2d 168 (1974). The trial court on remand allowed the filing of post-verdict motions. The motions were filed and considered and relief was denied. No direct appeal was taken. Appellant thereafter obtained new counsel and filed a petition under the Post-Conviction Hearing Act (PCHA),[1] alleging, *inter alia,* that his appeal rights had been denied. The trial court granted leave to appeal *nunc pro tunc* but denied relief in all other respects. On appeal, we affirmed. *Commonwealth v. Schroth*, 479 Pa. 485, 388 A.2d 1034 (1978). Appellant again acquired new counsel and filed a new PCHA petition. He alleged that trial counsel was ineffective for failing to raise certain issues and that appellate counsel was ineffective in failing to raise trial counsel's alleged ineffectiveness. The trial court dismissed the petition without a hearing. Appellant appealed that dismissal and we remanded for an evidentiary hearing. *Commonwealth v. Schroth*, 490 Pa. 232, 415 A.2d 1219 (1980). Following a hearing, the trial court denied relief. This appeal followed.

Appellant was charged with the death of Linda Lugar. According to the Commonwealth's evidence, appellant was with the decedent at 3:00 a. m. on October 25, 1972. A neighbor testified that she heard screams from the decedent's residence at 3:15 a. m. and saw an unidentified

1. Act of January 25, 1966, P.L. 1580, 19 P.S. § 1180–1, *et seq.*

individual leave at 3:40 a. m. The victim's nude body was found beaten, stabbed and strangled at 9:00 a. m. A thumbprint taken at the scene at 10:00 a. m. was later identified as appellant's print. A police officer testified that appellant made an oral statement to him in which he confessed to having an argument with the victim and strangling and stabbing her.

Appellant presented witnesses to establish that he had been drinking all evening prior to the killing. He testified that he had been at the victim's residence twice on the night of the killing. When he left the apartment for the first time, he realized that he had forgotten his jacket. When he returned to get it, appellant found the victim's body lying on the floor. Appellant further denied making any inculpatory statements.

In considering appellant's claim of ineffective counsel, we are governed by *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), where we held that a court must independently review the record and examine counsel's stewardship in light of available alternatives. The inquiry ceases and counsel is deemed to have been effective once the court is able to conclude that counsel's actions had a reasonable basis designed to effectuate the client's interests. The test is not whether it appears on hindsight that another course of action would have been more reasonable. Further, counsel is not ineffective in failing to assert a baseless claim. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

Appellant's first allegation of ineffectiveness relates to the testimony about the discovery of his thumbprint at the scene of the killing. The print was taken by a police sergeant who was employed as an identification officer. In the course of his duties, the officer removed appellant's thumbprint from the victim's door at 10:00 a. m. on October 25, 1972, approximately seven hours after the killing occurred. While being cross-examined by defense counsel, the officer testified as follows:

"Q: Do you know when—how old that thumbprint is?

"A: There is no accurate way to determine the age of a print, however, when you are processing them, if you have an old print or aged print, when you are processing it it comes up very, very faint due to the fact that the moisture has evaporated from the print. When you come to a fresh one like this one here as you process it is very dark which indicates only one thing, this is comparatively fresh print.

"Q: Comparatively fresh?

"A: That is correct, sir.

"Q: Would you be in a position to give us some—

"A: I wouldn't give you any length of hours, it is comparatively a fresh print it could be six hours, twelve hours old.

"Q: Could be a couple of days old?

"A: I would say not, I don't believe, no.

"Q: You don't believe?

"A: No, sir, not the way this is.

"Q: It is your opinion that the thumbprint, when you examine it first, is that thumbprint a day old or less?

"A: Like I stated I can't give you exact time, it could be a few hours old, it could be six hours, old, it could be eight hours old. I can't give you an exact time."

Appellant claims that counsel was ineffective for allowing the witness to testify as to the age of the print, citing *Commonwealth v. Crawford*, 468 Pa. 565, 364 A.2d 660 (1976). In that case, the same witness whose testimony is in question here removed fingerprints from the scene of a homicide. On direct examination by the prosecutor, and over the objection of the defense, the witness testified that "[t]he foreign matter . . . had to be placed there during or about the time of the commission of the crime." *Id.*, 468 Pa. at 571, 364 A.2d at 663–664. The witness conceded that, based upon information received from the Bureau of Alcohol, Tobacco, and Firearms, there was, in fact, no scientific way to date fingerprints. Furthermore, the witness admitted that his field of expertise was limited to lifting and identifying prints. However, on redirect examination, he

again expressed his opinion that the fingerprints were made at or about the time of the killing. We awarded a new trial because the testimony on the age of the fingerprints exceeded the scope of the witness' expertise.

█ The objectionable nature of this testimony does not render counsel ineffective. There are instances where it may be advantageous to allow the admission of technically objectionable testimony. *Commonwealth v. Witherspoon*, 481 Pa. 321, 392 A.2d 1313 (1978). Counsel testified at the hearing that he questioned the age of the thumbprint in an attempt to establish that the print could have been made before the killing, thereby showing that its presence did not necessarily implicate appellant in the crime. The print's age estimate made by the witness was not prejudicial because it could have been consistent with appellant's testimony that he had been at the scene both before and after the killing.

Appellant also claims that counsel was ineffective in not moving to suppress his alleged inculpatory statement. Appellant denied making the statement; he also alleged that the circumstances under which he was questioned by the police render any statement involuntary. In support of this claim he alleged: (1) that he was sick and intoxicated, thereby impairing his ability to respond to questions, (2) that police officers would not permit him to use toilet facilities until he confessed, (3) that the police refused his request for an attorney and continued to question him, and (4) that the written confession shown to him was inconsistent with everything he said orally and he refused to sign it. Appellant informed his attorney before trial of the above factors concerning the statement.

The attorney testified at the post-conviction hearing that he believed appellant and thus determined there was nothing to suppress. Counsel's strategy at trial involved cross-examining the interrogating police officer and introducing appellant's testimony that he did not make a statement, and that he was subjected to coercion by the police. At no time did counsel object to the officer's testimony concerning the alleged statement, nor did he request that the court deter-

mine its admissibility beyond the presence of the jury. In fact, counsel never voiced any objection to the admission of the statements into evidence. Clearly, then, defense counsel knew of appellant's version of the circumstances and believed that the alleged statement should be attacked; it is counsel's method of attack that is at issue.

There is ordinarily little tactical reason for not filing a motion to suppress. *Commonwealth v. Hill*, 231 Pa.Super. 371, 331 A.2d 777 (1974). We can perceive no reason for the failure to do so in the present case. Contrary to defense counsel's belief, if the Commonwealth proposed to introduce testimony about an inculpatory statement purportedly made by appellant, there was indeed a statement to suppress. If counsel had successfully moved to suppress, the jury would not have known about the alleged statement and there would have been no need to convince the jury to discredit it.

The United States Supreme Court recognized this premise when it held that a defendant is entitled to have the admissibility of a confession determined other than by the jury.[2] *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Defense counsel could have attempted to show at a suppression hearing that the statement had not been made. Alternatively, counsel could have tried to show that the circumstances were such as to render involuntary any statement that may have been made, in which case the statement should have been suppressed.

The Commonwealth must prove by a preponderance of the evidence that the statement was voluntary in order for a confession to be admissible. *Com. ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). The test for voluntariness is whether the confession is the product of an essentially free and unrestrained choice. *Commonwealth v. Alston*, 456 Pa. 128, 317 A.2d 241 (1974). A statement is not voluntary if the suspect's will is overborne and his or her

2. This Court allows a defendant to have a jury consider the voluntariness of a confession even after a suppression court has decided that issue adversely to the defendant. *Commonwealth v. Motley*, 472 Pa. 421, 372 A.2d 764 (1977).

capacity for self-determination is critically impaired, *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973). A suspect's will may be overborne by either physical or psychological coercion, *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973). A confession also may be rendered involuntary by prolonged questioning without counsel, *See, Commonwealth v. Riggins, supra,* or because of the suspect's intoxication. *Commonwealth v. McGeachy*, 487 Pa. 25, 407 A.2d 1300 (1979).

As appellant's version of the facts provided alternative potential bases for suppression, we find that there was no tactical reason not to move to suppress the statement; counsel was therefore ineffective. The case must be remanded for a suppression hearing. If it is determined that appellant did not make the inculpatory statement or, if made, that it was inadmissible, appellant must be given a new trial.

The Order of the Court of Common Pleas is vacated and the case is remanded for proceedings consistent with this opinion.

FLAHERTY, J., concurs in the result.