J-S08035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WITSON LAVILETTE | : | |
| | : | |
| Appellant | : | No. 187 EDA 2018 |

Appeal from the Judgment of Sentence August 18, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011475-2014

BEFORE:   BENDER, P.J.E., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MARCH 29, 2019**

Appellant Witson Lavilette appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of theft by deception, attempted theft by deception, and conspiracy to commit theft by deception.  Appellant's counsel filed a petition seeking to withdraw his representation, as well as a brief pursuant to ***Anders v. California***, 386 U.S. 738, 87 S.Ct. 1396 (1967), and ***Commonwealth v. McClendon***, 495 Pa. 567, 434 A.2d 1186 (1981) (hereinafter "***Anders*** brief").  We grant counsel's petition to withdraw and affirm the judgment of sentence.

On December 3, 2013, at approximately 8:30 a.m., Thomas Isenberg ("the complainant"), a 77-year old male who lives in California, received a phone call from a man identifying himself as a Philadelphia attorney named Tom Michaels.  "Michaels" asserted that the complainant's grandson, Brandon

_____
* Former Justice specially assigned to the Superior Court.

Isenberg, had been arrested in Phoenix, Arizona on DUI charges. At that time, Brandon lived in Phoenix and was employed by the U.S. Border Patrol.

"Michaels" then transferred the phone to another individual who pretended to be Brandon; "Brandon" claimed he had been arrested and requested money for bail. Thereafter, "Michaels" instructed the complainant to send $6,600 in cash overnight through UPS to satisfy Brandon's bail and to attempt to reduce Brandon's charges. "Michaels" indicated that Brandon would remain in jail if the complainant failed to send the money that evening.

After this exchange, the complainant attempted several times to contact Brandon and Daniel Isenberg, who is Brandon's father and the complainant's son. Unable to reach either individual, the complainant withdrew $6,600 in cash from his bank and sent the money to the specified Philadelphia address. That evening, the complainant was able to reach Daniel and learned that Brandon was never arrested. The complainant's subsequent attempt to stop delivery of the package was unsuccessful.

The complainant then contacted local authorities in California who indicated that they would install a digital recording device on the complainant's phone line if he received another call from "Michaels." Several days later, "Michaels" contacted the complainant again, alleging that Brandon would face additional charges as police had discovered drugs in Brandon's vehicle. "Michaels" demanded an additional $10,000 for Brandon's bail. After the complainant informed "Michaels" that he needed time to collect these funds, the complainant arranged for local officers to place the recorder on his phone.

On December 10, 2013, the complainant contacted "Michaels" to discuss the additional $10,000 transfer; this conversation was recorded by law enforcement. The complainant noted "Michaels'" voice sounded different than the individual who had contacted him on the previous occasions. The complainant then arranged with local law enforcement to send two packages, each containing $5,000 in fake currency to the address "Michaels" provided at 127 West Albanus Street in Philadelphia.

On December 11, 2013, officers from the Pennsylvania State Police and the Philadelphia Police Department set up a controlled delivery of the complainant's packages to 127 West Albanus Street through an undercover officer dressed as a UPS employee. After Ms. Anita Williams attempted to sign for one of the packages, officers apprehended her. Williams told the officers that she lived at the 127 West Albanus Street home with her children, but asserted that the package belonged to her former paramour, Spencer Compas. Several days earlier, Compas had asked Williams if he could have a package delivered to her home and she agreed. Williams averred she did not know what the package contained.

After noticing that Compas was waiting in his car nearby for the delivery of the package, officers apprehended Compas and placed him under arrest. During surveillance of the home, the authorities had also noticed an individual pacing up and down the street, holding a cell phone.

Compas subsequently gave a statement to Special Agent Gerard Brennan of the Pennsylvania Attorney General's Office, admitting that he had

been recruited by another individual to provide a delivery address and receive packages. Although Compas asserted that he did not know what the packages contained, he conceded he knew there would be illegality involved.

Officers subsequently identified Appellant as the individual who was pacing back and forth on Albanus Street during the controlled delivery of the complainant's package. Appellant similarly admitted that he was recruited to provide delivery addresses and receive packages containing U.S. currency and illegal U.S. passports. Appellant conceded that he and another individual arranged for a package to be delivered to 127 Albanus Street in Philadelphia on December 11, 2013 and were waiting to receive the package on that day.

On March 7, 2017, Appellant's jury trial commenced in which he was tried jointly with his co-defendant Compas. On March 9, 2017, the jury convicted both Appellant and Compas of theft by deception, attempted theft by deception, and conspiracy to commit theft by deception. On August 18, 2017, the trial court sentenced Appellant to an aggregate term of eight to twenty-three months' imprisonment to be followed by four years' probation.

On August 21, 2017, Appellant filed a post-sentence motion, claiming the jury's verdict was against the weight of the evidence. In this motion, trial counsel, Atty. Mark A. Hinrichs, asked for permission to withdraw as counsel as he planned to accept employment that month in Luzerne County. On September 27, 2017, the trial court granted Atty. Hinricks permission to

withdraw. Appellant's post-sentence motion was denied by operation of law on December 20, 2017.[1]

Appellant filed a timely notice of appeal through his new counsel, Attorney Lawrence Bozzelli. After the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), Attorney Bozzelli filed a statement of intent to file an *Anders*/*McClendon* brief in lieu of a concise statement pursuant to Pa.R.A.P. 1925(c)(4).

As an initial matter, we must evaluate counsel's petition to withdraw. *Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa.Super. 2013); *see also Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa.Super. 2005) (stating, "When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw[]") (citation omitted).

There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal pursuant to which counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

---

[1] In addition, on October 18, 2017, Appellant filed a motion for early parole, which was subsequently granted by the lower court on December 13, 2017.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted).

We further review Counsel's *Anders* brief for compliance with the requirements set forth in *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009):

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

602 Pa. at 178-79, 978 A.2d at 361.

Counsel also must provide the appellant with a copy of the *Anders* Brief, together with a letter that advises the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa.Super. 2007) (citation omitted). Substantial compliance with these requirements is sufficient. *Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa.Super. 2007).

In the *Anders* brief and petition to withdraw, counsel provides a summary of the facts and procedural history of the case, refers to evidence of record that might arguably support the issues raised on appeal, and provides

citations to relevant case law. Counsel avers that he made a "conscientious examination of the record and [] has determined that to continue with the appeal would be wholly frivolous as there are no meritorious issues that could be raised on direct appeal." **Anders** brief, at 11. Counsel also filed a copy of his letter in which he advised Appellant of his right to proceed *pro se* or with the assistance of privately retained counsel.

Accordingly, counsel has substantially complied with all of the technical requirements of **Anders** and **Santiago**. Therefore, we proceed to examine the issue counsel identified in the **Anders** brief and then conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1195 (Pa.Super. 2018) (*en banc*) (quotation omitted).

Appellant challenges the sufficiency of the evidence supporting his convictions. We are guided by the following standard of review:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial

does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Windslowe*, 158 A.3d 698, 708–709 (Pa.Super. 2017), *appeal denied*, 643 Pa. 85, 171 A.3d 1286 (2017) (quoting *Commonwealth v. Tukhi*, 149 A.3d 881, 886–87 (Pa.Super. 2016)).

Appellant was convicted of theft by deception, attempted theft by deception, and conspiracy to commit theft by deception. Pursuant to Section 3922 of the Crimes Code, "[a] person is guilty of theft by deception if he intentionally obtains or withholds the property of another by deception." 18 Pa.C.S.A. § 3922. Specifically, "deception" includes, but is not limited to, the "creat[ion] or reinforce[ment] of a false impression." 18 Pa.C.S.A. § 3922(a)(1). In addition, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901.

Moreover:

To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S.[A.] § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

- 8 -

"[M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by "the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Golphin*, 161 A.3d 1009, 1018–19 (Pa.Super. 2017), *appeal denied*, 642 Pa. 593, 170 A.3d 1051 (2017) (quoting *Commonwealth v. Murphy,* 577 Pa. 275, 292, 844 A.2d 1228, 1238 (2004) (citations and quotations omitted)).

These facts in this case, viewed in a light most favorable to the Commonwealth, establish beyond a reasonable doubt that it was proper for the jury to find Appellant guilty of theft by deception, attempted theft by deception, and conspiracy to commit theft by deception. The evidence presented at trial supports an inference that Appellant, his co-defendant Compas, and "Michaels" agreed to participate in a scam to deceive the complainant, an elderly gentleman who lived out-of-state. The men created and reinforced the false impression that "Michaels" was an attorney who needed funds to represent the complainant's grandson in urgent legal matters. The complainant relied on this false impression and was persuaded into

sending $6,600 in cash through UPS to a designated address in Philadelphia; the complainant was never able to recover this money.

Thereafter, "Michaels" instructed the complainant to send an additional $10,000 to 127 Albanus Street in Philadelphia. Appellant and Compas, who was Appellant's co-defendant and friend, admitted to police that they were instructed by another individual to facilitate the pickup of a package. Compas asked Anita Williams if he could have a package sent to her home at 127 Albanus Street. Although both men denied knowing what the package contained, they admitted they were aware that the package delivered involved contained "paper," which was code for money and illegal passports. Appellant admitted he was at 127 Albanus Street with other individuals the morning of the delivery to retrieve the package.

This evidence supports an inference that Appellant, Compas, and Michaels shared criminal intent to con the complainant into sending the money; their first attempt at deceiving the complainant into sending $6,600 was successful. Although the second attempt to deceive the complainant was thwarted by police, it is clear that Appellant took a substantial step towards the completion of the second theft in attempting to facilitate the delivery of the package. Accordingly, there is no merit to Appellant's challenges to the sufficiency of the evidence supporting his convictions.

Appellant also argues that his convictions were not supported by the weight of the evidence. Our standard of review is as follows:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Windslowe*, 158 A.3d at 712 (citations omitted).

In his post-sentence motion, Appellant baldly asserted that the verdict was against the weight of the evidence as he claimed there was no direct evidence linking him to the victim and characterized Special Agent Gerard Brennan of the Pennsylvania Attorney General's Office as a biased witness for the prosecution. As we noted above, the prosecution presented sufficient evidence to support Appellant's convictions; Appellant merely asks us to reweigh the evidence in his favor. However, we cannot substitute our judgment for that of the factfinder, as the jury "is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Id*. As we discern no abuse of discretion in the trial court's decision to deny Appellant's challenge to the weight of the evidence, this claim does not present a basis for relief.

Lastly, Appellant argues that the trial court abused its discretion in imposing a manifestly excessive sentence. However, Appellant did not preserve this challenge to the discretionary aspects of his sentence in the lower court. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. Moreover, "issues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings." *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003). Appellant failed to properly raise this claim at sentencing or in a post-sentence motion. denied the lower court an opportunity to reconsider its sentence based on Appellant's claim, this particular issue is waived on appeal.

After examining the issues contained in the *Anders* brief, we concur with counsel's assessment that the appeal is wholly frivolous. "Furthermore, after conducting a full examination of all the proceedings as required pursuant to *Anders*, we discern no non-frivolous issues to be raised on appeal." *Yorgey*, 188 A.3d at 1195. Thus, we grant counsel's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/19