186 N.J. Super. 262 (1982)
452 A.2d 477
STATE OF NEW JERSEY, PLAINTIFF,
v.
WILFORD GANTT, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided June 11, 1982.
*263 Dennis Kearney, Assistant Prosecutor, for plaintiff (George L. Schneider, Essex County Prosecutor, attorney).
Maria Noto, Assistant Deputy Public Defender, for defendant (Stanley C. Van Ness, Public Defender, attorney).
NEWMAN, J.S.C.
The matter before the court, the sentencing of Wilford Gantt, presents three novel questions involving interpretation of the Graves Act, N.J.S.A. 2C:43-6 c, d.[1] First, can the State, pursuant *264 to that act, show by a preponderance of the evidence that a weapon is a firearm when the weapon has not been recovered. Second, is the act unconstitutional as applied to Gantt. Third, is an accomplice who has been convicted twice of armed robbery and who never actually possessed the firearm in question eligible to be sentenced to a mandatory extended term pursuant to the Act.
The facts before the court are as follows: Gantt entered a guilty plea in October 1974 to an armed robbery of a grocery store committed the previous July. His role in the armed robbery was that of wheelman; he never used or physically possessed the gun. On March 4, 1982, Gantt was tried and convicted of armed robbery, again as an accomplice. In the present case Gantt and the other robber gained entry into the victim's car because Gantt knew the victim through his former employment. Once in the car, the other robber then drew a gun and demanded money from the driver. After taking the money, Gantt and the other robber fled. Gantt never used or was in actual physical possession of the firearm in either of these robberies. In the most recent armed robbery, the other robber was never identified or apprehended and the weapon was never recovered.

*265 I. Has the State shown by a preponderance of the evidence that the weapon used in both armed robberies was a firearm?

The first issue to be dealt with is whether a weapon can be shown to be a firearm by a preponderance of the evidence pursuant to N.J.S.A. 2C:43-6(d) where the weapon has not been recovered. The statute provides:
The court shall not impose a mandatory sentence pursuant to subsection c. of this section, 2C:43-7c or 2C:44-3d, unless the ground therefor has been established at a hearing. At the hearing, which may occur at the time of sentencing, the prosecutor shall establish by a preponderance of the evidence that the weapon used or possessed was a firearm. In making its finding, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing, or other court proceedings and shall also consider the presentence report and any other relevant information.
The State and defendant concur that operability must be shown before a weapon can be considered to be a firearm. The parties rely on the definition of firearm in N.J.S.A. 2C:39-1 f to support their contention that a weapon must be operable in order to qualify as a firearm. The definition of firearm reads:
"Firearm" means any hand gun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectible ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eights of an inch in diameter, with sufficient force to injure a person.
Neither party cites other authority for the proposition that this definition requires a showing of operability.
We do not agree that the definition of firearm implies operability. The language which suggests operability is: "from which may be fired or ejected any solid projectible ball, slug, pellet, missile or bullet ..." This clause does not modify the specific types of weapons listed at the beginning of the definition which unquestionably are firearms, namely, "hand gun, rifle, shotgun, machine gun, automatic or semi-automatic rifle...." *266 This list of types of guns, readily identificable as firearms, is separated from the remainder of the definition by the conjunction "or," and the types are specifically defined in N.J.S.A. 2C:39-1 k, m, n, and i.
The definition continues by including as firearms
... any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectible ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances."
This clause is generally descriptive, and modifies "any gun, device or instrument in the nature of a weapon...." The language is necessary to qualify a less recognizable type of weapon as a firearm. It is grammatically separated from the first part of the definition, and does not serve to modify "handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle ...." which are known to fire ammunition without being so described.
Quite significantly, the definition of firearm contains no language such as "readily capable of firing" or "capable of firing with minor adjustments." In the absence of authority to the contrary, it must be concluded that the definition of firearm does not require that the firearm be operable.[2]
At a Graves Act hearing the prosecutor is required to show by a preponderance of the evidence that "the weapon used or possessed was a firearm." N.J.S.A. 2C:43-6 d then states that the court can take judicial notice of evidence and testimony at trial, as well as presentence reports and other relevant information, in order to make the required finding. While the weapon *267 was not recovered, or in evidence at defendant's armed robbery trial, there was testimony at trial that the victim saw someone's hand wrapped around a small gun, and that he saw the barrel. There was no testimony to contradict the conclusion that the gun was real. In defendant's 1974 conviction defendant acknowledged in his own statement that a .25-caliber revolver was used by one of his codefendants to commit the holdup.
Nor is the present case one in which defendant should be surprised at his receiving exposure to an armed robbery sentencing. Defendant was indicted for committing a robbery while armed with a deadly weapon, a handgun. The jury was instructed that Gantt had committed a robbery while armed with, and threatening use of, a deadly weapon, a handgun, and the accomplice charge was given. A guilty verdict was returned by the jury for first degree robbery even though second degree robbery was presented for their consideration. When all of these factors are presented to the court, it can be demonstrated beyond a reasonable doubt, let alone the lesser standard of preponderance of the evidence, that a firearm was utilized in both armed robberies.[3]
*268 To summarize, there is sufficient evidence in the trial testimony of the 1982 conviction and in the statements of defendant surrounding the 1974 guilty plea as well as the plea to robbery and being armed to show by a preponderance of the evidence that the weapons used in both crimes were firearms.

II. Is the extended mandatory sentencing called for by the Graves legislation unconstitutional as applied to this defendant?

It is further contended that the mandatory extended term statute cannot be constitutionally applied to Gantt at this sentencing. More particularly, Gantt zeroes in on the standard of proof necessary to trigger the extended term. He maintains that a new element is required to be established in this proceeding, namely, that of operability of a firearm. He then argues that this additional or new element cannot constitutionally be shown by a standard less than beyond a reasonable doubt. Therefore, Gantt concludes that the standard of preponderance of the evidence works an unconstitutional twist to the statutory proviso contained in N.J.S.A. 2C:43-6 d. The argument must be rejected.
To begin with, Gantt's assumption that a new element of operability must be shown is incorrect. As previously discussed in Part I of this opinion, a showing of operability is not required in order to qualify a weapon as a firearm. Even if, arguendo, a showing of operability was required, there was more than sufficient evidence in this case to invoke the case law inference of operability.
Gantt's argument that a new crime has been created must likewise fail. It is undisputed that Graves Act sentencing *269 requires that a showing be made that the weapon used was a firearm, and that the standard of proof is by a preponderance of the evidence. There is no showing, however, that the Legislature intended this to be a new element of a new crime, or that this will be the effect if Gantt is sentenced under the statute.
The Graves legislation is a mandatory sentencing provision, and not a separate new crime. It was enacted as an amendment to N.J.S.A. 2C:43-6, one of the Code's sentencing provisions. Its effect is to make the penalty that could have been meted out in the court's discretion mandatory. It does not specify that the commission of a crime while using or possessing a firearm constitutes a separate felony. Nor does it provide for a separate, additional sentence in addition to that required for the crime.[4]
*270 Gantt, nevertheless, contends that the Graves Act creates a separate crime with a new element. He challenges the Graves requirement of only a preponderance of the evidence to show that the weapon used was a firearm. In support of his argument, a mistaken reliance is placed on In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In Winship the United States Supreme Court held that juveniles were entitled to the constitutional protection of proof beyond a reasonable doubt during the adjudicatory stages, when the juvenile was charged with an act which would constitute a crime if committed by an adult. It deals only with proof beyond a reasonable doubt of elements of a crime, and does not extend to sentencing or other post-trial proceedings held after the defendant has been convicted or adjudicated a delinquent.[5]
The Code draws the same sort of evidential distinctions in N.J.S.A. 2C:1-13 a. There, it provides that every element of an offense must be proved beyond a reasonable doubt. N.J.S.A. 2C:1-13 d then requires that:
... when the application of the Code depends on the finding of a fact which is not an element of an offense, unless the Code otherwise provides: (1) The burden of proving the fact is on the prosecution or the defendant, depending upon whose interest or contention will be furthered if the finding should be made; and (2) the fact must be proved to the satisfaction of the court or jury, as the case may be.
The comment to this Code section elaborates upon what the legislation contemplated with the following observations:

*271 8. Subsection d deals with findings of fact, called for in application of the Code, as to matters not an element of the offense within the meaning of 2C:1-13(h). Illustrations are: a finding that defendant lacks mental capacity to proceed, 2C:4-6b; a finding that defendant is a persistent offender, 2C:44-3 ...
... The standard of proof of subparagraph (d) i.e., that the fact be established to the satisfaction of the tribunal, is intentionally ambiguous. It means at least proof by a preponderance of the evidence, but beyond this the issue is left to the courts. The variety of situations requires flexibility.
The finding that must be made at a mandatory extended term sentencing, that the weapon used was a firearm, is therefore not analogous to proof of an element of a new crime. Rather, it is in the nature of a factor that must be shown, after conviction, to qualify a defendant for sentencing under this statute, and a preponderance of the evidence is an appropriate standard of proof. Before the Graves Act sentencing can be applied, a defendant must have been convicted of the underlying offense in which the use or possession of a firearm was established. At the sentencing hearing the State must be able to show that the weapon used was a firearm in the same manner that it must demonstrate that defendant is a second offender, if that is the case.
In the instant case, Gantt was indicted and tried for first degree robbery. There was testimony at trial that defendant's accomplice held a gun to the victim. The jury was instructed that defendant was armed with a deadly weapon, a handgun, and defendant was convicted. No new element is being injected into the proceedings at this point. The trial has been concluded, and the State is making its showing in support of defendant's sentencing, a situation clearly under the umbrella of N.J.S.A. 2C:1-13 d.
A Graves Act type sentencing is not without some precedent in this state. Enhanced penalties for habitual offenders, for example, have long been held to be constitutional in New Jersey. In State v. Washington, 47 N.J. 244 (1966), defendant contended that the habitual offender statute then in effect, N.J.S.A. 2A:85-12, violated his due process rights because it was a separate substantive offense, and an indictment was thus required. *272 In ruling on the constitutional argument, the court had this to say:
There is no merit to this contention. Habitual offender legislation does not create a new substantive crime, but rather imposes a greater penalty for the particular crime for which defendant is convicted, where such defendant has persistently engaged in unlawful activities. [citations omitted]. To protect persons and property of citizens of the State, heavier sentences are imposed on recidivists because they have demonstrated an inability to learn to accept social and civic responsibility. [at 248-249]
While it is acknowledged that the Graves legislation provides for mandatory confinement, rather than only enhanced punishment, its mandatory nature does not render it constitutionally infirm.
Regardless of the ultimate wisdom of adopting a limited mandatory sentencing scheme, it is clear that the Legislature is well within its authority in so doing. The United States Supreme Court, as early as 1820, in United States v. Wiltberger, 18 U.S. 76 (5 Wheat., 5 L.Ed. 37) (1820), recognized as much when it declared:
... [t]he power of punishment is vested in the legislature, not in the judicial department. It is the legislature, not the court, which is to define a crime, and ordain its punishment. [at 95, 5 Wheat., 5 L.Ed. 37]
United States v. Wiltberger was relied upon by the Supreme Court of Nevada in Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396, 1397 (Sup.Ct. 1975). In that case the court acknowledged that mandatory sentencing did not constitute an unconstitutional encroachment on the judicial function of sentencing. Id. at 542 P.2d 1397. Clearly, the Legislature is free to enact mandatory sentencing statutes, this being a matter of policy within its discretion. State v. Corbitt, 74 N.J. 379, 397 (1977), aff'd 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). Following adoption, these statutes will not be considered violative of due process unless not rationally related to government objective such as strong deterrence of armed crime. See Commonwealth v. Jackson, 369 Mass. 904, 344 N.E.2d 166 (Sup.Jud.Ct. 1976); Commonwealth v. McQuoid, 369 Mass. 925, 344 N.E.2d 179 (Sup.Jud.Ct. 1976). [Constitutional challenges based on cruel and unusual punishment, and upon legislative usurping of the judicial function were unsuccessful.]
*273 Mandatory sentences for crimes committed with firearms have also withstood constitutional challenges based on double jeopardy. Woofter v. O'Donnell, supra. The Michigan Felony Firearm Act, n. 2, supra, has survived a double jeopardy challenge despite that it creates a separate offense and imposes an additional mandatory sentence separate from the sentence for the underlying crime. Wayne Cty. Prosecutor v. Recorder's Court Judge, 406 Mich. 374, 280 N.W.2d 793 (Sup.Ct. 1979), app. dism. sub nom. Brintley v. Michigan, 444 U.S. 948, 100 S.Ct. 418, 62 L.Ed.2d 317 (1979).
The Graves Act also survives a double jeopardy challenge, as one was suggested here, as it neither attempts to add a consecutive additional penalty to that imposed for commission of the crime, nor expressly creates a separate felony because of possession of the firearm during the commission of the underlying crime.
It must be concluded that the Graves Act can permissibly be applied to Gantt at this sentencing. It was shown at trial, beyond a reasonable doubt, that Gantt was an accomplice to an armed robbery, committed with a handgun. The State must now demonstrate, by a preponderance of the evidence, that the handgun used was indeed a firearm. Such a showing works no element of surprise to Gantt, and denies him no constitutional protection.

III. Is an accomplice subject to a mandatory extended term under N.J.S.A. 2C:43-6(c)?

The question presented is whether a twice convicted accomplice to armed robbery can be exposed to mandatory extended sentencing pursuant to the Graves Act. The pertinent part of N.J.S.A. 2C:43-6(c) provides:
A person who has been convicted of an offense enumerated by this subsection and who used or possessed a firearm during its commission, attempted commission or flight therefrom and who has been previously convicted of an offense *274 involving the use or possession of a firearm as defined in 2C:44-3d, shall be sentenced by the court to an extended term.
Despite the lack of legislative history surrounding the enactment of the Graves Act, it is obvious that the act was designed to deter the commission of serious crimes committed by person wielding guns.[6] That being so, it is thus consistent with one of the Code's stated aims, that of insuring "public safety by preventing the commission of offenses through the deterrent influence of the sentences imposed, and the confinement of offenders when required in the interest of public protection." N.J.S.A. 2C:1-2 b(3).
The language of the Graves Act, read literally, suggests that only persons who actually use or possess the firearm in question are exposed to its sentencing terms. An argument that accomplices are excluded by the literal language of the statute fails, however, to take cognizance of the law of complicity which permeates all substantive offenses in the Code. To be sure, a person is held legally accountable for crimes which he helped to commit under N.J.S.A. 2C:2-6. The commentary to the Code makes it abundantly clear that one active in complicity does not have to be specifically charged as an accomplice. As the Code states:

*275 As is presently true in New Jersey, which has abolished the common law distinctions between principals and accessories, it is sufficient under the Code to charge commission of a crime. [2 N.J. Criminal Law Revision Commission Final Report (1971), at 62]
N.J.S.A. 2C:2-6(f) provides that a person may be convicted as an accomplice upon proof that the offense was committed and of his complicity in the offense. The commentary to this section sheds the following illumination on the subject:
Subsection f is concerned with procedural problems concerning the distinction between principals and accessories. First, the paragraph follows the modern legislation which deprives the distinction between principals and accessories of its common law procedural significance. Thus, the law would continue to be that the distinction between principal and accomplice, or aider and abettor has been abolished in New Jersey for purposes of indictment and punishment. [Revision, supra at 62]
There was, therefore, never a question that a wheelman, or one who otherwise aids an armed robbery could be indicted, tried and punished for the substantive offense. Throughout the Code, accomplices are liable for the substantive offenses defined, despite no specific language to that effect except as described in N.J.S.A. 2C:2-6.
Here, Gantt was indicted for first degree armed robbery. The pertinent portion of the armed robbery statute under which Gantt was charged is that robbery is a crime of the first degree if "the actor ... is armed with or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:15-1. There is no language within this statute which specifically states that it applies to accomplices. It is, however, clear that the effect of 2C:2-6 is to make accomplices liable for the substantive offense of armed robbery. It is equally clear from the comment to 2C:2-6 that accomplices are to be punished as principals. Graves Act sentencing would undoubtedly apply to a principal who committed robbery while in possession of a firearm. By the same token, applying the law of complicity, the statute must also be said to apply to accomplices.
*276 A statutory construction argument aimed at strict construction of the language of the statute so as to exclude accomplices must likewise be rejected. Admittedly, the Graves Act recites that a person "who used or possessed a firearm" is eligible for mandatory sentencing. The extended sentencing provision also provides that a defendant is eligible to be sentenced as a second offender with a firearm if "he used or possessed a firearm as defined in 2C:39-1f." N.J.S.A. 2C:44-3 d. The argument in favor of exclusion of accomplices relies on the axiom that penal statutes must be strictly construed and that the Legislature meant to impliedly exclude accomplices by its use of the terms "used" and "possessed."
Although the principal of strict construction of penal statutes had support in the prior case law in New Jersey, see, e.g., State v. Johnson, 109 N.J. Super. 69 (App.Div. 1970), it is no longer an absolute rule. The Code has its own construction provisions, and the commentary to the Code makes it clear that "[t]he Code does not, as such preserve the rule that `penal laws must be strictly construed' although paragraphs a(4) and b(5) affirm that fair warning is one of its major purposes." Revision, supra at 4.
The Code's own construction objectives are the principles followed in interpreting the Code. N.J.S.A. 2C:1-2(c) makes this clear when it states:
The provisions of the Code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purpose of the particular provision involved.
Since the "use" and "possess" language of the Graves Act is susceptible to differing constructions by reason of the accomplice section of the Code, we must consider the general purposes of the Code sentencing provisions, as well as the special purposes of the Graves Act. The general purposes of sentencing provisions are contained in N.J.S.A. 2C:1-2b. The applicable ones to this case are: to prevent and condemn the commission of offenses (2C:1-2 b(1)); to prevent commission of offenses *277 through the deterrent influence of sentences imposed (2C:1-2 b(3)); the confinement of offenders when required (2C:1-2 b(3)); to safeguard offenders against arbitrary punishment (2C:1-2 b(4)), and to give offenders fair warning of the nature of sentences that may be imposed upon conviction (2C:1-2 b(5)). As stated before, the special purpose of this particular provision, the Graves Act, appears to be targeted at the deterrence of crimes committed with handguns through the imposition of mandatory custodial sentences and the extended separation from society of that class of violent offenders.
Sentencing accomplices under the Graves Act obviously furthers the first two general sentencing purposes. Accomplices, under the law, have participated in armed crime, as fully as did the actual user or possessor of the firearm. Sentencing the actual user and not the accomplice under the Graves Act would not further the general purposes of preventing and condemning offenses and confining the offenders when necessary. Moreover, if accomplices were excluded, it could be considered arbitrary punishment because their culpability in the law's eyes is the same as that of the principals.
The other general objective, that offenders should be fairly warned that their conduct will result in severe penal consequences would not be furthered by excluding accomplices from Graves Act sentencing. The act's language gives strong notice to armed offenders that mandatory sentencing will result from participation in armed crime. As previously discussed, the complicity statute applies to this provision as well as to the substantive offense. An armed accomplice to armed robbery would not succeed in a due process challenge to his conviction, claiming that he had no notice that he would be held legally accountable for armed robbery. Similarly, an accomplice cannot claim that he had no warning that he would be punished as an armed offender under the statute. If the unarmed person does not know enough not to involve himself with an armed criminal, he *278 is not going to be the wiser if he is told that an extended sentence, mandatorily imposed, awaits him. Sentencing accomplices under the Graves Act thus furthers the purpose of that statute and is also consistent with the general sentencing purposes embodied in Title 2C.
Moreover, if the Legislature had intended that accomplices be excluded from Graves Act sentencing, it would have indicated this, as it did in N.J.S.A. 2C:11-3(3)(a), the felony-murder statute. In defining felony-murder the statute provides for an affirmative defense that the defendant was not an accomplice to the commission of the homicidal act. This treatment of accomplices illustrates that the Legislature does specifically provide for exclusion of accomplices when it is its intent to do so. It has not done so in the Graves Act.[7]
Other jurisdictions which have considered mandatory custodial or enhanced sentences for accomplices to armed crimes have reached the conclusion that accomplices are amenable to such terms. In State v. Sanders, 280 N.W.2d 375 (Iowa Sup.Ct. 1979), the defendant was the getaway man in an armed robbery. He was convicted and sentenced to a mandatory five-year term *279 because of the use of a gun in the crime. An Iowa statute provided for additional terms for persons possessing and displaying firearms during commission of armed felonies. The Iowa complicity statute provides that those who aid and abet are tried, charged and punished as principals. The sentence appealed from was upheld. While the New Jersey complicity statute does not expressly state that accomplices are punished as principals, the commentary to the Code does note that "the law would continue to be that the distinction between principal and accomplice or aider and abettor has been abolished in New Jersey for purposes of indictment and punishment." Revision, supra at 62. Thus, an accomplice would be subject to the same punishment as the principal.[8]
In State v. Jones, 324 N.E.2d 770 (Ohio App.Ct. 1975), the defendant was convicted of two counts of armed robbery, where he was carrying a switchblade and his codefendant carried a gun. Defendant had been sentenced to a term of imprisonment for violation of probation immediately prior to the instant sentencing. Despite a statute that precluded probation to offenders who commit offenses while armed with firearms or other dangerous ordnances, the judge sentenced Jones to a term of probation, to be done after he served his sentence for probation *280 violation. (A switchblade is not within the definition of "dangerous ordnance" in Ohio.) On appeal the court held that the probation should have been denied, not because defendant was carrying a switchblade, but because as an accomplice to armed crime is punished as though he were the principal offender under Ohio R.C. 2923.03.
In People v. Perryman, 250 Cal. App.2d 813, 58 Cal. Rptr. 921 (D.Ct.App. 1967), defendants were found guilty of driving automobiles outside burglarized buildings as aiders and abettors of first degree burglary, and of being armed while committing the offense, although the guns were inside the building with the other burglars. The court held that enhanced punishment for use of a deadly weapon while committing a crime applies to aiders and abettors as well as the actual armed offender. To hold otherwise, the Perryman court reasoned, would nullify the legislative intent of the statute providing for this punishment.
The Legislature, in enacting the Graves Act, obviously intended to adopt a tough, no-nonsense approach toward sentencing of armed criminals. Considering this clear expression of legislative intent together with the law on complicity, the statutory construction rules embodied in the Code and authority from other jurisdictions, the conclusion is inescapable that accomplices to armed crimes under the Graves Act must be treated as principals upon sentencing.
In conclusion, this court is of the opinion that Gantt is subject to be sentenced to a mandatory extended term on the jury's guilty verdict for the crime of first degree robbery. Pursuant to N.J.S.A. 2C:43-6 c, 2C:43-7 c and 2C:44-3 d, he is now exposed to a term between 20 years and life imprisonment, which sentence may include a maximum disqualifying period of one-half of the sentence imposed by the court, but not more than 25 years should life imprisonment be deemed the appropriate sentence. The sentencing in this matter will be heard forthwith.
NOTES
[1] N.J.S.A. 2C:43-6 c, d is part of the legislation enacted as L. 1981, c. 31. The sponsor of this legislation was Senator Frank Graves and the legislation is commonly known as the "Graves Bill" and will be so referenced throughout this opinion. The text of the Graves Act is as follows:

N.J.S.A. 2C:43-6(c):
c. A person who has been convicted under 2C:39-4a, or of a crime under any of the following sections: 2C:11-3, 2C:11-4, 2C:12-1b, 2C:13-1, 2C:14-2a, 2C:14-3a, 2C:15-1, 2C:18-2, 2C:29-5, who, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a firearm as defined in 2C:39-1f, shall be sentenced to a term of imprisonment by the court. The term of imprisonment shall include the imposition of a minimum term. The minimum term shall be fixed at, or between one-third and one-half of the sentence imposed by the court or 3 years, whichever is greater, or 18 months in the case of a fourth degree crime, during which the defendant shall be ineligible for parole. The minimum terms established by this section shall not prevent the court from imposing presumptive terms of imprisonment pursuant to 2C:44-1f(1) except in cases of crimes of the fourth degree. A person who has been convicted of an offense enumerated by this subsection and who used or possessed a firearm during its commission, attempted commission or flight therefrom and who has been previously convicted of an offense involving the use or possession of a firearm as defined in 2C:44-3d, shall be sentenced by the court to an extended term as authorized by 2C:43-7c, notwithstanding that extended terms are ordinarily discretionary with the court.
N.J.S.A. 2C:44-3 d reads as follows:
Second Offender with a firearm. The defendant is at least 18 years of age and has been previously convicted of any of the following crimes: 2C:11-3, 2C:11-4, 2C:12-1b, 2C:13-1, 2C:14-2a, 2C:14-3a, 2C:15-1, 2C:18-2, 2C:29-5, 2C:39-4a, or has been previously convicted of an offense under Title 2A of the New Jersey Statute which is equivalent of the offenses enumerated in this subsection and he used or possessed a firearm as defined in 2C:39-1f, in the course of committing or attempting to commit any of these crimes, including the immediate flight therefrom.
[2] A similar conclusion has been reached by a Michigan Appellate court in People v. Boswell, 95 Mich. App. 405, 291 N.W.2d 57 (1980). That court held that the Michigan definition of firearm, which is nearly identical to New Jersey's, was designed to be descriptive. The definition aided in distinguishing firearms from other types of weapons, but that the definition did not imply operability. The court also found that operability was irrelevant to a conviction under the Michigan Felony Firearm Act, as requiring such a showing would militate against the strong legislative intent to discourage armed crime.
[3] It must also be noted that even if operability is required to be shown in order to qualify a weapon as a handgun, a case law inference of operability exists and can be applied in this case. The inference was first set out in State v. Cole, 154 N.J. Super. 138 (App.Div. 1977), certif. den. 78 N.J. 415 (1978), and in State v. Schultheis, 113 N.J. Super. 11 (App.Div.), certif. den. 58 N.J. 390 (1971). Cole and Schultheis were both cases in which defendants were charged with possession of firearms. Both were convicted; neither weapon was recovered. Neither defendant raised operability at trial. Both defendants appealed on the ground that no evidence had been presented at trial to support the notion of operability, thus it had not been proved that the firearm was a firearm as per the Title 2A definition. Both courts noted that the issue had not been raised at trial.

The Schultheis court relied on the testimony of the victim who saw the gun and was capable of identifying it. It held that a rational inference could be drawn, tantamount to legal fact, that the gun was operable. State v. Schultheis, supra at 116. The Cole court held that the application of the inference of operability would not depend on the recovery of the weapon or its production in court. There had been testimony at the Cole trial that one robber was holding a .32-caliber revolver and that it made a "click, click" sound as though a trigger was being pulled back off a revolver. The court found the testimony of this person to be proof enough that the firearm was "real" and operable. State v. Cole, supra at 146.
[4] Compare the Michigan Felony Firearm Act to the Graves legislation, which creates a separate felony and provides for an additional mandatory sentence:

§ 28.424(2) Firearm possession at the time of commission of felony or attempt; felony; penalty; second conviction. Sec. 227b(1) A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 or section 227a, is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this section, the person shall be imprisoned for 10 years.
Imprisonment in addition to other sentence; consecutive service shall be in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.
Sentence, nonsuspension; parole or probation; lack of eligibility. (3) the term of imprisonment imposed under this section shall not be suspended. The person subject to the sentence mandated by this section shall not be eligible for parole or probation during the mandatory term imposed pursuant to subsection (1) [M.C.L.] § 750.227b. Mich. Stat. Ann. § 28.424(2) (Callaghan Rev.Vol. 1981.) Mich. Comp. Laws Ann. § 750.227b (1981)]
If the New Jersey Legislature had intended to create a new offense with an additional sentence, it could have done so as did the Michigan legislature. The New Jersey Legislature obviously intended to create a sentencing statute, not a new substantive crime.
[5] Similarly, Gantt's argument that sentencing him under the Graves legislation will usurp the function of the jury has no merit. Gantt voluntarily entered a guilty plea to armed robbery in 1974, and was convicted by a jury of armed robbery in 1982. There is no question that the Sixth Amendment requires a jury trial before conviction of a serious crime. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). There is also no question that Gantt received such a trial. The Sixth Amendment has not been interpreted to require another jury trial, after conviction and before sentencing, and counsel has furnished no authority that it has been so interpreted. Moreover, it is beyond the scope of this opinion and not necessary at this time to define the boundaries of Graves sentencing hearings.
[6] See, generally, State in the Interest of H.B., 75 N.J. 243 (1977). Chief Justice Hughes, in dictum, points out the deep public concern over the proliferation of handguns and their use in violent crime:

There are projected to be no less than 40 million handguns in circulation in this country today, with about 2.5 million being added to that pool each year. United States Conference of Mayors, National Forum on Handgun Control Proceedings at 6 (forum in Los Angeles, California, May 27-29, 1975). This volatile mixture of violence and the surfeit of handguns which is its primary co-efficient, presents much danger to law-abiding society and a particular threat to the uniformed law enforcement community which is frequently its target. [at 245-246].
One of the Legislature's responses to gun proliferation and violence is the enactment of extended mandatory sentencing legislation where firearms are used in the commission of violent crimes.
[7] The Legislature has again been sensitive to the distinction between principals and accomplices in the context of the death penalty legislation. Senate Bill No. 112, amending N.J.S.A. 2C:11-3 to restore the death penalty in some cases where the defendant has been convicted of murder, has recently been passed by the New Jersey Senate. This bill explicitly limits the exposure of accomplices to the death penalty to situations in which the accomplice hired the murderer. The statement to that bill, dated March 1, 1982, declares in the introductory paragraph that "persons convicted under the felony-murder doctrine and persons convicted as accomplices other than as procurers would not be eligible for capital punishment." While a life/death decision may be different from an ordinary sentence, a mandatory extended term is not qualitatively or quantitatively insignificant. The Legislature, if it had intended the same qualification regarding accomplices, could have easily stated it as clearly in the Graves Act as it has in its efforts to restore the death penalty. They certainly appear to appreciate the exposure for an accomplice and have sought to deal with it most directly and effectively in the death penalty context, should such legislation be enacted into law in this State.
[8] Iowa Code § 902.7 provides:

At the trial of a person charged with participation in a forcible felony, if the trier of fact finds beyond a reasonable doubt that the person is guilty of a forcible felony and that the person represented that he or she was in the immediate possession and control of a firearm in a threatening manner, or was armed with a firearm while participating in the forcible felony the convicted person shall serve a minimum of five years of the sentence imposed by law. A person sentenced pursuant to this section shall not be eligible for parole until he or she has served the minimum sentence of confinement imposed by this section. [Emphasis supplied]
This section of the Iowa Code has language similar to the Graves Act in that it clearly states that "he or she was in the possession and control of a firearm." Despite this language, the court, as noted above, applied complicity law and sentenced an unarmed accomplice to a mandatory term.