494 A.2d 354

COMMONWEALTH of Pennsylvania, Appellee,

v.

Sandra L. WRIGHT, Appellant.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Dynel McMILLAN, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Lorna PETERSON, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

James J. DENNISON, Appellee.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Harold L. SMALLS, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 6, 1984.

Decided June 10, 1985.

Eric B. Henson, Deputy Dist. Atty., Steven J. Cooperstein, Philadelphia, for appellant in all cases, except No. 4 E.D. Appeal Docket 1984.

Robert D. Bacher, Lancaster, for appellant in No. 4 E.D. Appeal Docket 1984.

John W. Packel, Chief, Appeals Div., Leonard Sosnov, Philadelphia, for appellee in No. 28 E.D. Appeal Docket 1984 and for amicus in No. 106 E.D. Appeal Docket 1984.

Gerald A. Stein, Philadelphia, for appellee in No. 62 E.D. Appeal Docket 1984.

Mary McNeill Zell, Philadelphia, for appellee in No. 101 E.D. Appeal Docket 1984.

Josept W. Carroll, III, Deputy Dist. Atty., Stuart Suss, Asst. Dist. Atty., William A. Behe, Deputy Atty. Gen., Robert A. Graci, Media, for appellee in No. 4 E.D. Appeal Docket 1984.

Robert M. Lipshutz, Philadelphia, for appellee in No. 106 E.D. Appeal Docket 1984.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The issue in these appeals is the constitutionality of section 9712 of the Mandatory Minimum Sentencing Act, 42 Pa.C.S. § 9712, which requires the imposition of a minimum sentence of five years' total confinement upon persons found to have been in visible possession of a firearm during the commission of certain felonies. Each of the defendants was convicted of one of the section's enumerated offenses, and in each case the Commonwealth sought to proceed under the section. In four of these cases the trial court, holding the section unconstitutional, declined to apply it.[1]

1. In *Commonwealth v. McMillan*, No. 28 E.D., Appeal Docket 1984, appellee McMillan was convicted by a jury of aggravated assault, 18

In the remaining case a constitutional challenge to the statute was rejected and the defendant was sentenced to a five-year term of imprisonment.[2]

## I.

Section 9712, entitled "Sentences for offenses committed with firearms," provides as follows:

(a) Mandatory sentence.—Any person who is convicted in any court of this Commonwealth of murder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) (relating to aggravated assault) or kidnapping, or who is convicted of attempt to commit any of these crimes, shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any

Pa.C.S. § 2702(a)(1), and possession of instruments of crime generally, 18 Pa.C.S. § 907(a). He was sentenced to concurrent terms of three to ten and two and one-half to five years respectively.

In *Commonwealth v. Peterson,* No. 62 E.D. Appeal Docket 1984, appellee Peterson was convicted after a bench trial of voluntary manslaughter, 18 Pa.C.S. § 2503, and possession of instruments of crime generally. She received a sentence of one to six years on the manslaughter charge and a concurrent six to eighteen month sentence on the weapons count.

In *Commonwealth v. Dennison,* No. 101 E.D. Appeal Docket 1984, appellee Dennison was convicted by a judge of aggravated assault and possession of instruments of crime generally. Concurrent sentences of eleven and one-half to twenty-three months were imposed.

In *Commonwealth v. Smalls,* No. 106 E.D. Appeal Docket 1984, appellee Smalls was convicted after a bench trial of robbery, 18 Pa.C.S. § 3701(a)(1), and criminal conspiracy, 18 Pa.C.S. § 903, for which he was sentenced to concurrent four to eight year terms. He was also convicted of violation of the Uniform Firearms Act, 18 Pa.C.S. §§ 6101 *et seq.,* and reckless endangerment, 18 Pa.C.S. § 2705, for which he was sentenced to concurrent terms of two and one-half to five and one to two years respectively. Sentence was suspended on his conviction of possession of instruments of crime.

2. In *Commonwealth v. Wright,* No. 4 E.D. Appeal Docket 1984, appellee Wright pleaded guilty to the charge of robbery and was sentenced to five years' imprisonment pursuant to 42 Pa.C.S. § 9712.

other provision of this title or other statute to the contrary.

(b) Proof of sentencing.—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

(c) Authority of court in sentencing.—There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

(d) Appeal by Commonwealth.—If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

(e) Definition of firearm.—As used in this section "firearm" means any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein.

42 Pa.C.S. § 9712.

The constitutional challenge to section 9712 centers upon subsection (b)'s provision that the issue of the applicability of the statute, i.e., whether the defendant visibly possessed a firearm during the commission of the offense, is to be determined by a preponderance of the evidence. In the four appeals in which the section was declared constitutionally infirm, the trial court concluded that the preponderance standard violates due process. The rationale for those decisions is that visible possession of a firearm is an element of the crime for which the defendant is being sentenced and thus requires proof beyond a reasonable doubt. If that theory is correct the statute clearly violates due process and we need proceed no further. If, however, we conclude that visible possession of a firearm is not an element of the crime, we must determine whether proof of that fact by a preponderance of the evidence satisfies the Due Process Clause.

## A.

We begin by noting that the legislature explicitly provided in section 9712(b) the "[p]rovisions of this section shall not be an element of the crime...." 42 Pa.C.S. § 9712(b). "Under our system of jurisprudence the legislature is charged with the responsibility of defining the elements of crimes." *Commonwealth v. Graves*, 461 Pa. 118, 126, 334 A.2d 661, 665 (1975). Moreover, as defined in the Crimes Code, an element of an offense is

[s]uch conduct or such attendant circumstances or such a result of conduct as:

(1) is included in the description of the offense;

(2) establishes the required kind of culpability;

(3) negatives an excuse or justification for such conduct;

(4) negatives a defense under the statute of limitation; or

(5) establishes jurisdiction or venue.

18 Pa.C.S. § 103.

Visible possession of a firearm is neither included in the definitions of the felonies enumerated in section 9712(a) nor does it establish the culpability required under those definitions. *See* 18 Pa.C.S. §§ 2502(c), 2503, 2702(a)(1), 2901, 3121, 3123, 3701(a)(1)(i)–(iii). Subsections (3), (4) and (5) of the statutory definition of "element of an offense" are clearly inapplicable. Thus, under Pennsylvania law, even in the absence of an explicit statement by the legislature visible possession of a firearm could not be considered an element of the crime of which a defendant subject to section 9712 has been convicted.

## B.

It is argued, however, that the section in effect creates a new set of upgraded felonies of which visual possession is a material element. We disagree. Section 9712 does not alter the degree of guilt as to the crimes to which it may be applied. Third degree murder, robbery as defined in 18 Pa.C.S. § 3701(a)(1), kidnapping, rape and involuntary deviate sexual intercourse are felonies of the first degree subjecting the defendant to a maximum of twenty years' imprisonment. Voluntary manslaughter and aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) are felonies of the second degree carrying a maximum sentence of ten years. Section 9712 neither provides for an increase in these maximum sentences nor authorizes a separate sentence. It merely mandates a minimum sentence of five years, which may be greater or less than the minimum sentence which might otherwise be imposed.[3]

Moreover, section 9712 applies only in the event the defendant is convicted of one of the offenses enumerated therein and thus relates solely to the sentencing proceedings. The section in question removes from the sentencing court the discretion to decide whether total confinement is appropriate and whether to set a minimum sentence of less

---

3. We note that the instant statute, unlike the sentencing statute construed in *Commonwealth v. Glover*, 397 Pa. 543, 547, 156 A.2d 114, 117 (1959), explicitly provides for a *minimum* sentence of five years, 42 Pa.C.S. § 9712(a).

than five years. Visible possession of a firearm during the commission of the crime is a sentencing factor which, if found, is dispositive of those issues. The legislature has thus foreclosed the possibility of leniency to such gun-users. Thus we conclude that visible possession is not an element of the crimes specified in the section.

We reject the argument that *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), compel a contrary conclusion. In *In re Winship, supra,* the United States Supreme Court, after discussing the vital role of the reasonable, doubt standard in the American scheme of criminal procedure stated:

> Lest there be any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*Id.* at 364, 90 S.Ct. at 1073.

Language in a subsequent decision of that Court, *Mullaney v. Wilbur, supra,* appeared to indicate that *Winship* was not limited to the elements of the crime as defined by state law. *Id.* 421 U.S. at 698, 699 n. 24, 95 S.Ct. at 1889, 1890 n. 24. *Mullaney* struck down a Maine homicide statute which provided for the single generic offense of felonious homicide with three "punishment categories" based on degree of culpability. Under the statute, as described by the Court, intent was not an element of the crime, having bearing only on the appropriate punishment category. As a result, "Maine could impose a life sentence for any felonious homicide—even one that traditionally might be considered involuntary manslaughter—unless the defendant was able to prove that his act was neither intentional nor criminally reckless." *Id.* at 699, 95 S.Ct. at 1889 (emphasis in original; footnote omitted). The Court held that the Due Process Clause required the prosecution to prove absence of heat of passion or sudden provocation beyond a reasonable

doubt when the issue was properly presented. *Id.* at 704, 95 S.Ct. at 1892.

In *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), however, the Court declined to extend *Winship* to New York's affirmative defense of "extreme emotional disturbance," rejecting the argument that *Mullaney* held that "the State may not permit the blameworthiness of an act *or the severity of the punishment authorized for its commission* to depend on the presence or absence of an identified fact without assuming the burden of proving the presence or absence of that fact, as the case may be, beyond a reasonable doubt." *Patterson v. New York, supra* at 214, 97 S.Ct. at 2329 (emphasis added). Rather the Court gave *Mullaney* a much narrower reading:

> *Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. This is true even though the State's practice, as in Maine, had been traditionally to the contrary. Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.

*Patterson v. New York, supra* at 215, 97 S.Ct. at 2329. While acknowledging the appropriateness of due process concerns in this area of law, the Court declined to intrude upon the State legislatures' authority to define offenses:

> Whenever due process guarantees are dependent upon the law as defined by the legislative branches, some consideration must be given to the possibility that legislative discretion may be abused to the detriment of the individual. *See Mullaney v. Wilbur,* 421 U.S., at 698–699 [95 S.Ct. at 1889–1890]. *The applicability of the reasonable-doubt standard, however, has always been dependent on how a state defines the offense that is charged in any given case;* yet there has been no great rush by

states to shift the burden of disproving traditional elements of the criminal offenses to the accused.

*Id.* at 211 n. 12, 97 S.Ct. at 2327 n. 12 (emphasis added).

Thus the Court refused to disturb its previous holdings that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt *all of the elements included in the definition of the offense of which the defendant is charged." Id.* at 210, 97 S.Ct. at 2327 (emphasis added). Finding extreme emotional disturbance to be a separate issue which did not negative any elements of the crime which the State was required to prove, the Court rejected the due process challenge to the statute.

The *Patterson* Court cautioned, however, that the Due Process Clause precludes the states from discarding the presumption of innocence:

"[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime." *McFarland v. American Sugar Rfg. Co.,* 241 U.S. 79, 86 [36 S.Ct. 498, 501, 60 L.Ed. 899] (1916). The legislature cannot "validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt." *Tot v. United States,* 319 U.S. 463, 469 [63 S.Ct. 1241, 1246, 87 L.Ed. 1519] (1943). See also *Speiser v. Randall,* 357 U.S. [513], at 523–525 [78 S.Ct. 1332, 1340–1342, 2 L.Ed.2d 1460 (1958) ]. *Morrison v. California,* 291 U.S. 82 [54 S.Ct. 281, 78 L.Ed. 664] (1934), also makes the point with sufficient clarity.

*Id.* at 210, 97 S.Ct. at 2327.

■ The United States Supreme Court decisions discussed above lend no support to the theory that visible possession should be deemed an element of the crimes punishable pursuant to section 9712. In making visible possession of a firearm a sentencing factor to be considered only after conviction of specified offenses, the legislature has in no way relieved the prosecution of its burden of proving guilt. Section 9712 creates no presumption as to any essential fact and places no burden on the defendant. Thus under *Win-*

*ship, Mullaney* and *Patterson* the Due Process Clause does not require that visible possession be treated as an element of the underlying offense to be proved beyond a reasonable doubt.

## II.

We must now consider whether proof by a preponderance of the evidence of a sentencing factor which, if established, mandates a minimum sentence of five years' total confinement satisfies the requirements of due process. That the Due Process Clause is implicated in sentencing as well as guilt determination is no longer open to question.

█t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel. *Mempa v. Rhay,* 389 U.S. 128 [88 S.Ct. 254, 19 L.Ed.2d 336 (1967)]; *Specht v. Patterson,* 386 U.S. 605 [87 S.Ct. 1209, 18 L.Ed.2d 326 (1967)]. The defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process. See *Witherspoon v. Illinois,* 391 U.S. 510, 521–523 [88 S.Ct. 1770, 1776–1778, 20 L.Ed.2d 776 (1968)].

*Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977) (footnote omitted).

█ Although sentencing proceedings must comport with due process, the convicted defendant need not be accorded "the entire panoply of criminal trial procedural rights." *Id.* at 358 n. 9, 97 S.Ct. at 1205 n. 9. As the United States Supreme Court has explained:

Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation to authority that due process is flexible and calls

for such procedural protections as the particular situation demands.... Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

*Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

We are here concerned with the use of preponderance standard to determine the presence or absence of a statutory sentencing factor. The relevant due process considerations involved in determining the appropriateness of a standard of proof are cogently summarized in *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982):

In *Addington v. Texas,* 441 U.S. 418 [99 S.Ct. 1804, 60 L.Ed.2d 323] (1979), the Court, by a unanimous vote of the participating Justices, declared: "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Id.,* at 423 [99 S.Ct. at 1808], *quoting In re Winship,* 397 U.S. 358, 370 [90 S.Ct. 1068, 1075, 25 L.Ed.2d 368] (1970) (Harlan, J., concurring). *Addington* teaches that, in any given proceeding, the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants.

Thus, while private parties may be interested intensely in a civil dispute over money damages, application of a "fair preponderance of the evidence" standard indicates both society's "minimal concern with the outcome," and a conclusion that the litigants should "share the risk of error in roughly equal fashion." 441 U.S. at 423 [99 S.Ct. at 1808]. When the State brings a criminal action to deny a defendant liberty or life, however, "the interests of the

defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment." *Ibid.* The stringency of the "beyond a reasonable doubt" standard bespeaks the "weight and gravity" of the private interest affected, *id.,* at 427 [99 S.Ct. at 1810], society's interest in avoiding erroneous convictions, and a judgment that those interests together require that "society impos(e) almost the entire risk of error upon itself." *Id.,* at 424 [99 S.Ct. at 1808]. See also *In re Winship,* 397 U.S., at 372 [90 S.Ct. at 1076] (Harlan, J., concurring).

The "minimum requirements [of procedural due process] being a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Vitek v. Jones,* 445 U.S. 480, 491 [100 S.Ct. 1254, 1263, 63 L.Ed.2d 552] (1980). See also *Logan v. Zimmerman Brush Co., ante,* [455 U.S. 422] at 432 [102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ]. Moreover, the degree of proof required in a particular type of proceeding "is the kind of question which has traditionally been left to the judiciary to resolve." *Woodby v. INS,* 385 U.S. 276, 284 [87 S.Ct. 483, 487, 17 L.Ed.2d 362] (1966). "In cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual liberty.' " *Addington v. Texas,* 441 U.S. at 425 [99 S.Ct. at 1809], quoting *Tippett v. Maryland,* 436 F.2d 1153, 1166 (CA4 1971) (opinion concurring in part and dissenting in part), cert. dism'd *sub nom. Murel v. Baltimore City Criminal Court,* 407 U.S. 355 [92 S.Ct. 2091, 32 L.Ed.2d 791] (1972).

This Court has mandated an intermediate standard of proof—"clear and convincing evidence"—when the individual interests at stake in a state proceeding are both "particularly important" and "more substantial than mere

loss of money." *Addington v. Texas*, 441 U.S. at 424 [99 S.Ct. at 1808]. Notwithstanding "the state's 'civil labels and good intentions,'" *id.*, at 427 [99 S.Ct. at 1810], quoting *In re Winship*, 397 U.S. at 365–366 [90 S.Ct. at 1073–1074], the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" or "stigma." 441 U.S. at 425, 426 [99 S.Ct. at 1809, 1810]. See, *e.g., Addington v. Texas, supra* (civil commitment); *Woodby v. INS*, 385 U.S. at 285 [87 S.Ct. at 487] (deportation); *Chaunt v. United States*, 364 U.S. 350, 353 [81 S.Ct. 147, 149, 5 L.Ed.2d 120] (1960) (denaturalization); *Schneiderman v. United States*, 320 U.S. 118, 125, 159 [63 S.Ct. 1333, 1336, 1353, 87 L.Ed. 1796] (1943) (denaturalization).

*Id.* at 754–757, 102 S.Ct. at 1395–1397. (footnote omitted).

In assessing section 9712's preponderance standard we must weigh the liberty interest of the defendant against the Commonwealth's interest in imposing a mandatory sentence and determine how the risk of error should be distributed between those two parties in the sentencing proceeding. *See id.* at 754, 102 S.Ct. at 1395; *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

The liberty interest of a defendant facing a sentencing proceeding pursuant to section 9712 is similar to that of other convicted defendants awaiting sentence. He stands convicted of a serious felony upon proof beyond a reasonable doubt. His right to remain free from confinement has thus been extinguished, *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1976); *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), and he is subject to punishment.

It is the province of the legislature to determine the punishment imposable for criminal conduct.[4] *Commonwealth v. Glover*, 397 Pa. 543, 156 A.2d 114 (1959); *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958); *Commonwealth v. Cano*, 389 Pa. 639, 133 A.2d 800, *cert. denied and appeal dismissed*, 355 U.S. 182, 78 S.Ct. 267, 2 L.Ed.2d 186 (1957). The maximum penalties for the first and second degree felonies enumerated in section 9712 have been set at twenty (20) and ten (10) years respectively. 18 Pa.C.S. §§ 1103, 2502(c), 2503(c), 2702(b), 2901(b), 3121, 3123, 3701(b). The legislature has chosen to vest the courts with the discretion to prescribe within statutory limits the maximum and minimum sentence to be served. The defendant "has no substantive right to a particular sentence within the range authorized by statute." *Gardner v. Florida, supra* 430 U.S. at 358, 97 S.Ct. at 1204. Thus regardless of whether section 9712 is invoked a defendant convicted of one of the crimes listed therein could be sentenced to a minimum sentence of five (5) years.

The effect of section 9712 is merely to limit the discretion of the sentencing court in the selection of a minimum sentence where it is determined that the defendant visibly possessed a firearm during the commission of the crime. The maximum permissible term of imprisonment remains unaffected. The defendant has no cognizable right to leniency. Thus although a finding that this particular sentencing factor is present may have serious consequences for the defendant, we do not believe that a defendant subject to a section 9712 proceeding is in a position significantly

4. For this reason the argument that section 9712 violates the separation of powers principle by depriving the sentencing court of discretion may be rejected out of hand. We must also decline the invitation to hold that section 9712 improperly delegates this legislative power to the executive by giving the prosecution discretion whether to invoke the mandatory sentencing procedure. We perceive no distinction between such an exercise of discretion and the prosecutorial discretion exercised at any other stage of the criminal prosecution. The decision to accord the Commonwealth a measure of discretion as to whether to employ section 9712 in a given case was a proper exercise of legislative judgment.

distinguishable from that of other convicted defendants during the sentencing phase.

The Commonwealth's countervailing interest in the imposition of a mandatory five (5) year sentence, on the other hand, is unquestionably important. The Commonwealth seeks to protect the public from armed criminals and to deter violent crime and the illegal use of firearms generally, as well as to vindicate its interest in punishing those who commit serious crimes with guns. This societal interest is at least as compelling as the defendant's interest in lenient punishment.

■ Having weighed the respective individual and public interests at stake, we conclude that it is reasonable for the defendant and the Commonwealth to share equally in any risk of error which may be present in the factfinding process. In the context of a section 9712 proceeding, moreover, the risk of error is slight. Visible possession of a firearm is a simple, straightforward issue susceptible of objective proof. There is scant potential that suspicion and conjecture will enter into the factfinder's decision. In addition, evidence of visible possession is amenable to meaningful appellate review. Thus we are convinced that the preponderance standard satisfies the minimum requirements of due process as employed in the legislature's mandatory sentencing scheme.

The decisions of the United States Supreme Court in which a heightened standard of proof has been mandated are clearly distinguishable. Unlike cases in which a fundamental liberty interest is at stake, *e.g., Santosky v. Kramer, supra* (involuntary termination of parental rights); *Addington v. Texas, supra* (involuntary commitment to mental institution); *Woodby v. I.N.S.,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation); *Chaunt v. United States,* 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (loss of citizenship), here the defendant's fundamental right, i.e., freedom from confinement, has already been forfeited. The determination to be made will at most have bearing on the duration of confinement, a question which has traditionally

been committed to the discretion of the sentencing court. The fact that the finding of a discreet fact has been made crucial to the determination of the minimum sentence the defendant must serve does not magnify the stature of his individual interest. As we have indicated, the defendant has no right to avoid punishment and no right to a particular punishment within the pertinent statutory range. Thus we reject the notion that an intermediate standard of proof such as "clear and convincing evidence" is dictated by the circumstances of a section 9712 proceeding.

### III.

For all of the above reasons,[5] we hold that section 9712 satisfies the minimum requirements of the Due Process Clause. Since we have upheld the constitutionality of section 9712 the sentences in the appeals at Nos. 28, 62, 101 and 106 Eastern District Appeal Docket 1984 must be vacated and those cases remanded for resentencing pursuant to section 9712. The judgment of sentence in the appeal at No. 4 Eastern District Appeal Docket 1984 must be affirmed.

So ordered.

LARSEN, J., joins in this opinion and files a concurring opinion.

LARSEN, Justice, concurring.

Society can not tolerate the tyranny of armed felons. Recognizing this, the legislature wisely enacted legislation providing for a mandatory minimum five-year jail term for those who visibly use a firearm in the commission of the following serious felonies: "[m]urder of the third degree, voluntary manslaughter, rape, involuntary deviate sexual intercourse, robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii) or (iii) (relating to robbery), aggravated assault as de-

5. For additional arguments supporting this view see the concurring opinion of Mr. Justice Larsen, *Commonwealth v. Wright*, et al., 508 Pa. 25, 42–44, 494 A.2d 354, 363 (1985) (Larsen, J., joining and concurring), in which I join.

fined in 18 Pa.C.S. § 2702(a)(1) (relating to aggravated assault) or kidnapping, or who is convicted of attempt to commit any of these crimes ..." 42 Pa.C.S.A. § 9712(a). It is intended, and it is reasonable to believe, that application of the Mandatory Sentencing Act will deter the dangerous and intimidating use of firearms by felons in the perpetration of crimes. A lengthened incarceration for felons who make visible use of firearms in the execution of their criminal deeds tends to have the effect of maintaining in the citizenry, much needed confidence in our criminal justice system.

The principal issue before the court in this appeal is the challenge to the constitutionality of the standard of proof set forth in the Mandatory Sentencing Act.[1] It is argued that the preponderance of the evidence standard, which is prescribed by the Act to determine whether the convicted felon visibly possessed a firearm during the commission of the crime, is constitutionally deficient. I, as the majority with whom I join, find no merit in this argument. I write separately, however, to express my views regarding this important issue and to expand upon the reasons for holding that the preponderance standard is the constitutionally proper standard of proof.

Under the terms of the Act, visible possession of a firearm during the commission of one of the specified offenses is not an element of the underlying crime, nor does it constitute a separate offense calling for a separate penalty. Statutorily, visible possession of a firearm is a sentencing factor to be determined by the trial judge after conviction. Proof of that factor triggers the Act and makes

---

1.  42 Pa.C.S.A. § 9712(b) provided:
    **Proof at sentencing.**—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. *The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.* (Emphasis added).

44

mandatory a sentence which could have otherwise been pronounced within the discretion of the court.[2] Proof by "a preponderance of the evidence" satisfies due process and is an appropriate standard in establishing visible possession of a firearm as a sentencing factor. *See State v. Gantt*, 186 N.J.Super. 262, 452 A.2d 477 (1982), *affirmed*, 195 N.J.Super. 114, 478 A.2d 422 (App.Div.1984).[3]

"Three standards of proof are generally recognized, ranging from the 'preponderance of the evidence' standard employed in most civil cases, to the 'clear and convincing' standard reserved to protect particularly important interests in a limited number of civil cases, to the requirement that guilt be proved 'beyond a reasonable doubt' in a criminal prosecution. *See Addington v. Texas*, 441 U.S. 418, 423–424 [99 S.Ct. 1804, 1807–1808, 60 L.Ed.2d 323] (1979)."

*California v. Mitchell Bros. Santa Ana Theater*, 454 U.S. 90, 93, 102 S.Ct. 172, 173, 70 L.Ed.2d 262 (1981).

The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular

**2.** The act restricts the judge's discretion to be lenient in imposing sentence. When the statute is applicable, the court lacks authority to place a convicted offender on probation or to suspend sentence. 42 Pa.C.S.A. § 9712(c).

**3.** In *Gantt*, the New Jersey Superior Court held that the "preponderance of the evidence" standard fixed by the New Jersey Mandatory Sentence Statute was a constitutionally proper measure of proof. The relevant section of the New Jersey statute provides:

d. The court shall not impose a mandatory sentence pursuant to subsection c. of this section, 2C:43-7c. or 2C:44-3d., unless the ground therefor has been established at a hearing. At the hearing, which may occur at the time of sentencing, the prosecutor *shall establish by a preponderance of the evidence* that the weapon used or possessed was a firearm. In making its finding, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing, or other court proceedings and shall also consider the presentence report and any other relevant information. (Emphasis added).

N.J.S.A. 2C:43-6 d.

type of adjudication." *In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring). The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington v. Texas*, 441 U.S. at 423, 99 S.Ct. at 1808.

■ In a criminal trial in this Commonwealth an accused can only be convicted of a crime by proof beyond a reasonable doubt. It is only after this heavy burden is met by the Commonwealth that any consideration of the statutory sentencing factor—visible possession of a firearm—is appropriate.

"[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirement of due process."

*Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977).

"The fact that due process applies [at sentencing] does not, of course, implicate the entire panoply of criminal trial procedural rights."

*Id.* at 359, 97 S.Ct. at 1205 n. 9. *See also Commonwealth v. Riggins*, 474 Pa. 115, 126, 377 A.2d 140, 145 (1977).

Due process is a flexible concept. What process is due depends upon the circumstances of each case, including the nature of the interests that are at stake and the particular proceeding in question. *See Groppi v. Leslie*, 404 U.S. 496, 500, 92 S.Ct. 582, 585, 30 L.Ed.2d 632 (1972); *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 894–95, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961); *Hannah v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); *Commonwealth v. Mayberry*, 459 Pa. 91, 102, 327 A.2d 86, 92 (1974).

*In re Martorano*, 464 Pa. 66, 74, 346 A.2d 22, 26 (1975).

The interests at stake here are the convicted criminal's interest in obtaining a light or lenient penalty for his crime as opposed to society's twofold interest in: (a) sure and certain incarceration for those who commit crimes with

guns, and (b) deterring the illegal use of firearms in the Commonwealth. In assessing these divergent interests, it is important to keep in mind that the defendant has already been found guilty of criminal conduct calling for some form of punishment. By his conviction the defendant has forfeited his right to remain free in society and is subject to incarceration. Proof of visible possession of a firearm by a preponderance of the evidence at the time of sentence based upon that conviction is a fair standard and is the process due in these circumstances. The Commonwealth has a legitimate interest in protecting its citizens from dangerous criminals who use firearms in the commission of violent crimes. A heavier burden of proof is not constitutionally required to impose a statutorily mandated minimum sentence.

Proof by the preponderance of the evidence is the standard approved in a variety of proceedings involved in some manner with criminal defendants. A review of case law, both Pennsylvania and federal, which, in such instances, accredited and applied the preponderance standard shows that the same test is constitutionally sufficient in determining visible possession of a firearm under the Act.

In the case of *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) the United States Supreme Court approved a District of Columbia statute which provided for commitment to a mental hospital of a criminal defendant who is found not guilty by reason of insanity. Under the D.C. statute, a defendant who interposes an insanity defense is required to establish his insanity only by a preponderance of the evidence. The Court concluded "that a finding of not guilty by reason of insanity is a sufficient foundation for commitment of an insanity acquittee for the purposes of treatment and the protection of society." *Id.* The defendant argued that under *Addington*, [*v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)] he could only be committed upon proof by clear and convincing evidence. The defendant contended his commitment, therefore, which was based upon a finding of insanity

by a preponderance of the evidence, violated due process. The Court, in rejecting defendant's argument, said:

> "[s]ince automatic commitment under the [D.C. Statute] follows only if the *acquittee himself* advances insanity as a defense and proves that his criminal act was a product of his mental illness, there is good reason for diminished concern as to the risk of error."

*Id.* at 367, 103 S.Ct. at 3051. The Court concluded that because concerns vital to its holding in *Addington* do not appear in the case of an insanity acquittee, there is little reason for applying the clear and convincing standard of proof in both instances. "The preponderance of the evidence standard comports with due process for commitment of insanity acquittees." *Id.* at 368, 103 S.Ct. at 3051.

Proof by a preponderance of the evidence is the settled standard applied in suppression hearings, both in the federal courts and Pennsylvania courts, when evidence is challenged on constitutional grounds. A trial judge will admit into evidence those confessions that are found, *by a preponderance of the evidence,* to have been made voluntarily. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *Butler v. Rundle,* 429 Pa. 141, 239 A.2d 426 (1968); *Commonwealth v. Yocham,* 483 Pa. 478, 397 A.2d 766 (1979); *Commonwealth v. Schroth,* 495 Pa. 561, 435 A.2d 148 (1981).

Recently, the United States Supreme Court in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) affirmed the preponderance of the evidence standard of proof in the application of the ultimate or inevitable discovery exception to the exclusionary rule. The Court in discussing the justification for the exception said:

> It is clear that the cases implementing the Exclusionary Rule "begin with the premise that the challenged evidence is *in some sense* the product of illegal governmental activity." *United States v. Crews,* 445 U.S. 463, 471, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980) (emphasis added). Of course, this does not end the inquiry. *If the prosecution can establish by a preponderance of the*

*evidence* that the information ultimately or inevitably would have been discovered by lawful means then the deterrence rationale has so little basis that the evidence should be received. (Emphasis added).

*Id.* at ——, 104 S.Ct. at 2509.

The preponderance of evidence standard serves society well in the context of suppression hearings and in those cases where a court is required to consider the inevitable discovery exception to the exclusionary rule.

"Evidence obtained in violation of the Fourth Amendment has been excluded from federal [and state] criminal trials for many years. (Citation omitted). The same is true of coerced confessions offered in either federal or state trials. (Citations omitted). But from our experience over the period of time no substantial evidence has accumulated that federal rights have suffered from determining admissibility *by a preponderance of the evidence.* Petitioner offered nothing to suggest that admissibility rulings have been unreliable or otherwise wanting in quality because not based on some higher standard." (Emphasis added).

*Lego v. Twomey, supra* 404 U.S. at 488, 92 S.Ct. at 626.

Our courts have consistently held that in parole and probation revocation proceedings the Commonwealth's burden is to prove a violation by a *preponderance of the evidence. Commonwealth v. Brown,* 503 Pa. 514, 520 n. 2, 469 A.2d 1371, 1373 n. 2 (1983); *Commonwealth v. Gochenaur,* 331 Pa.Super. 187, 480 A.2d 307 (1984); *Commonwealth v. DelConte,* 277 Pa.Super. 296, 419 A.2d 780 (1980). As in a sentencing hearing under Section 9712, implicit in a revocation hearing is the competing interests of the criminal defendant and the Commonwealth. In a revocation proceeding "the liberty of [alleged violater], although indeterminate, includes many of the core values of unqualified liberty and, its termination inflicts a 'grievous loss' on the [alleged violater] and often on others." *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593 at 2601, 33 L.Ed.2d 484 (1972). The Commonwealth has a legitimate contending

interest "in being able to return [a violater] to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole." *Id.* This lighter burden of proof is consistent with the focus of a revocation hearing which seeks to determine whether parole or probation, in the individual case, is "an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct." *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701 (1973). *See also Commonwealth v. Gochenaur,* 331 Pa.Super. at 191, 480 A.2d at 309.

This same standard of proof has been held to be the proper one in determining whether a convicted defendant is to be considered dangerous and given an enhanced sentence under a federal statute relating to dangerous special offenders. (18 U.S.C.A. § 3575(b)). *See United States v. Schell,* 692 F.2d 672 (10th Cir.1982).

A heightened standard of proof to establish visible possession of a firearm as a sentencing factor was not deemed desirable by the legislature and is not constitutionally required. The lesser burden of proof specified by the act is in harmony with the focus of a sentencing hearing under Section 9712 which is to decide the one discreet fact of whether the defendant was in visible possession of a firearm when he committed the crime for which he was convicted. Proof by a preponderance of the evidence as prescribed by Section 9712(b) satisfies due process.[4]

This concurring opinion is joined in by the majority opinion.

4. *Cf. Commonwealth v. Bostic,* 500 Pa. 345, 456 A.2d 1320 (1983) (Opinion by Larsen, J.), wherein we upheld the constitutionality of Section 416 of the Act of June 24, 1939, P.L. 872, 18 P.S. § 4416, as amended (*see* 18 Pa.C.S. Appendix) which was then in effect and which provided:
   (b) Whoever is convicted of committing a crime of violence, which for the purposes of this section means murder, rape, robbery, burglary, entering a building with intent to commit a crime therein, kidnapping or participation in riot and during the commission thereof had in his possession a firearm shall, in addition to the

penalties prescribed by law, be sentenced to undergo imprisonment for not less than five (5) years and not more than ten (10) years.