J-S33033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.J.N., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.N. | : | No. 2034 MDA 2016 |

Appeal from the Order Entered November 22, 2016
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):  88-AD-2016,
CP-22-DP-0000085-2015

BEFORE:   BENDER, P.J.E., OTT, and STRASSBURGER[*], JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED OCTOBER 17, 2017**

M.N. (Mother) appeals from the order and decree entered November 22, 2016, in the Court of Common Pleas of Dauphin County, which terminated involuntarily Mother's parental rights to her minor son, G.J.N. (Child), born in January 2014.[1]  Also before us is an application for leave to withdraw and brief filed by Mother's counsel pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The order and decree also changed Child's permanency goal to adoption with respect to Mother.  The court entered a separate order and decree that same day, which changed Child's permanency goal to adoption and terminated parental rights involuntarily with respect to Child's father, R.H. (Father).  Father has not filed a brief in connection with this appeal, nor has he filed his own separate appeal.

A.2d 349 (Pa. 2009). Upon review, we grant counsel's application for leave to withdraw and affirm the order and decree.

We summarize the relevant factual and procedural history of this matter as follows. Dauphin County Social Services for Children and Youth (the Agency) first became involved with Mother in September 2013, prior to Child's birth, due to concerns regarding Child's four older siblings. N.T., 11/21/2016, at 5-8. Child's siblings were removed from Mother's care after Mother was incarcerated on a bench warrant relating to a simple assault charge. *Id.* at 5, 7-8. In addition, the Agency learned of reports that Mother was squatting in her home, and that two of Child's older siblings were dirty, smelled, and were suffering from insect bites. *Id.* at 8. Mother was released from incarceration in November 2013, about two months prior to Child's birth. *Id.* at 9.

Initially, Child remained in Mother's care. For approximately the first year of Child's life, he and Mother moved from place to place, while the Agency provided Mother with services in an effort to reunify her with Child's older siblings. *Id.* at 9-41. In March 2015, Mother was evicted from her housing at the YMCA, due to "breach[ing] the confidentiality of another resident," among other things. *Id.* at 40-41. The Agency filed a dependency petition with respect to Child on April 10, 2015, and he was

adjudicated dependent and removed from Mother's care by orders dated April 30, 2015.[2] *Id.* at 44-46; Exhibits 5 and 6.

On September 19, 2016, the Agency filed a petition to terminate involuntarily Mother's parental rights to Child. The orphans' court conducted a termination hearing on November 21, 2016. Following the hearing, on November 22, 2016, the court entered an order and decree terminating Mother's parental rights. Mother timely filed a notice of appeal on December 12, 2016, which included a statement of counsel's intent to file an application for leave to withdraw and *Anders* brief pursuant to Pa.R.A.P. 1925(c)(4). Mother's counsel filed an application for leave to withdraw and *Anders* brief in this Court on March 10, 2017.

Before reaching the merits of Mother's appeal, we first must address counsel's application for leave to withdraw. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'"). "In *In re V.E.*, 417 Pa.Super. 68, 611 A.2d 1267 (1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights." *In re*

---

[2] Mother went on to relinquish her parental rights to two of Child's older siblings voluntarily. N.T., 11/21/2016, at 6-8. The remaining two siblings are in the custody of their father. *Id.* at 8.

***X.J.***, 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to ***Anders***, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of ***Anders***, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an ***Anders*** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

In the instant matter, counsel filed an application for leave to withdraw, certifying that she reviewed the case and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case supported by citations to the record, a potential issue that could be raised by Mother, and counsel's assessment of why that issue is meritless, with citations to relevant legal authority.[3] Counsel also has provided us with a copy of her letter to Mother, advising her that she may retain new counsel or raise additional issues *pro se*.[4] Accordingly, counsel has complied with the requirements of **Anders** and **Santiago**. We, therefore, may proceed to review the issue outlined in the **Anders** brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

---

[3] Counsel's application for leave to withdraw and **Anders** brief include certificates of service, indicating that counsel provided copies to Mother.

[4] Counsel's initial letter to Mother included the incorrect mailing address for the Superior Court Prothonotary's Office. Accordingly, on June 16, 2017, this Court entered a *per curiam* order directing counsel to provide Mother with a new letter including the correct address, and to provide this Court with a copy of that letter within ten days. However, counsel failed to timely file a new letter. Counsel did not file a new letter until July 10, 2017, after our Prothonotary's Office contacted her in an effort to discern why she had failed to comply with our order. On July 26, 2017, Mother filed a response *pro se*.

Counsel's **Anders** brief raises the following issue for our review. "Did the [orphans'] court abuse its discretion, or commit an error of law by determining it was in [Child's] best interest to have Mother's parental rights terminated by clear and convincing evidence?"[5] **Anders** Brief at 8.

We address this issue mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if

---

[5] Although this issue mentions only "best interests" pursuant to 23 Pa.C.S. § 2511(b), Mother's argument section focuses primarily on an analysis of subsection 2511(a). Pursuant to our duty in **Flowers**, we will address both.

the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights pursuant to subsections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of subsection 2511(a), as well as subsection 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under subsections 2511(a)(2) and (b), which provides as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be

- 7 -

beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to subsection 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the orphans' court found that Child has been removed from Mother's care since April 30, 2015, and that Mother failed to remedy the conditions which led to Child's removal. Orphans' Court Opinion, 1/31/2017, at 11. The court emphasized that Mother made minimal progress in terms of completing her permanency objectives and acquiring appropriate

- 8 -

parenting skills, and that Mother defied the service providers attempting to help her.[6] *Id.*

Our review of the record supports the findings of the orphans' court. During the termination hearing, the Agency presented the testimony of caseworker, Samantha Weirich. Ms. Weirich testified that Mother's reunification objectives included maintaining communication with the Agency caseworker, obtaining and maintaining an adequate and legitimate source of income to provide for herself and for Child, maintaining a violence-free relationship, demonstrating an ongoing commitment to Child, completing a parenting program, obtaining and maintaining safe and sanitary housing for herself and for Child, and working with family reunification services. N.T., 11/21/2016, at 60-66.

_____

[6] At the conclusion of the termination hearing, the orphans' court found that the Agency met its burden of proof "beyond a preponderance of the evidence, in fact, for me beyond a reasonable doubt, … I'm charged with making sure that the goal has been met, the preponderance of the evidence, and we're well beyond that with the facts that were presented here." N.T., 11/21/2016, at 158-59. We caution the court that the correct burden of proof in these matters is clear and convincing evidence. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Nonetheless, because the court found that the evidence supported the termination of Mother's parental rights beyond a reasonable doubt, we conclude that any error on the part of the court was harmless. *See Commonwealth v. Wright*, 494 A.2d 354, 364 (Pa. 1985) ("Three standards of proof are generally recognized, ranging from the preponderance of the evidence standard employed in most civil cases, to the clear and convincing standard reserved to protect particularly important interests in a limited number of civil cases, to the requirement that guilt be proved beyond a reasonable doubt in a criminal prosecution." (internal citations and quotation marks omitted)).

Ms. Weirich testified that Mother made at least some progress with respect to several of these objectives. Specifically, Mother maintained consistent communication with Ms. Weirich. *Id.* at 60. Mother also obtained several jobs during Child's dependency, although she failed to maintain any of those jobs for longer than two months. *Id.* Concerning parenting programs, Ms. Weirich testified that Mother completed the YMCA's parents support and education program, but failed to complete the Pressley Ridge in-home direct parenting program. *Id.* at 64. Ms. Weirich did not believe that the YMCA program was sufficient to provide Mother with appropriate parenting skills, because it was "more of a peer-based parenting skills class versus what Pressley Ridge was working on which was a lot of like in-home direct parenting … it was peer directed." *Id.* Mother had housing at the time of the termination hearing, although Mother's lease was in the name of Child's maternal grandmother, and the Agency did not know if Child would be permitted to stay there. *Id.* at 65.

With respect to Mother's other objectives, Ms. Weirich testified that Mother made little, if any, progress. Ms. Weirich testified that Mother failed to maintain a violence-free relationship. *Id.* at 62. While Mother did complete a domestic violence program at the YMCA, she continued to pursue either physically or verbally abusive relationships. *Id.* at 62-63. Mother maintained at least three such relationships since 2013, including a relationship with a man named J.L., a relationship with a "male in Lancaster County," and a relationship with Father. *Id.* Ms. Weirich further testified

that Mother failed to demonstrate an ongoing commitment to Child. Ms. Weirich emphasized that Mother often needed to be redirected during her visits with Child and paid little attention to him. *Id.* at 63. While Mother's parenting skills showed improvement over "the past couple of months," Ms. Weirich remained concerned for Child's safety if he were to be left unsupervised in Mother's care. *Id.* at 64. Finally, Ms. Weirich testified that Mother failed to work with family reunification services. Ms. Weirich explained that Mother was discharged unsuccessfully from three family reunification programs between June 2014 and April 2016. *Id.* at 54, 65-66. Ms. Weirich explained, "it's unknown how [Mother] will react when [visits are] unsupervised or in her home due to the fact that she did not want reunification services, … we can't say whether or not she was able to grow any more in her parenting abilities." *Id.* at 64-65.

Thus, the record establishes that Mother is either unwilling or unable to parent Child, and that Mother will not be capable of parenting Child at any point in the foreseeable future. By the time of the termination hearing on November 21, 2016, the Agency had been involved with Mother with respect to Child, or with respect to Mother's older children, for approximately three years. Throughout that time, Mother continued to suffer from unstable housing and abusive relationships. In addition, despite completing a parenting program, Mother's parenting skills remained a concern. The orphans' court did not abuse its discretion by concluding that Child's life should not be put on hold any longer. As this Court has stated, "a child's life

- 11 -

cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights pursuant to subsection 2511(b). We have discussed our analysis under subsection 2511(b) as follows.

> [Sub]section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the orphans' court found that terminating Mother's parental rights would serve Child's needs and welfare. Orphans' Court Opinion, 1/31/2017, at 12. The court explained that Child is bonded with his foster parents, and that it would be detrimental for Child to be removed from their care. *Id.* at 13. In contrast, the court continued, there was no evidence during the termination hearing that Child has a bond with Mother, or that it would be detrimental to Child if that bond were severed. *Id.*

We again conclude that the record supports the findings of the orphans' court. With respect to Child's needs and welfare, Ms. Weirich testified that Child has resided in a pre-adoptive foster home since July 2015. N.T., 11/21/2016, at 71. Ms. Weirich explained that Child's foster father works from home and cares for him during the day. *Id.* at 72. Child's relationship with his foster father is "fantastic…. He goes to his foster father for support. They throw balls [with] each other. They run around in the grass. [Child] interacts really well with him." *Id.* at 71-72. Child also has a good relationship with his foster mother. *Id.* at 72. "She does work outside the home, but at visits she's always loving, she's always giving hugs, things like that…. She also looks at him lovingly. He goes to her for support, [h]e shows her things that he finds around the house." *Id.* Ms. Weirich agreed that Child treats his foster parents as his parents. *Id.* at 72-73.

- 13 -

Concerning Mother, Ms. Weirich testified that Child's relationship with her "seems okay." *Id.* at 73. Ms. Weirich explained,

> Like he'll run. He likes to play with her. But he's not upset when he leaves her. And most recently when we had case aides to pick [Child] up to transport him to visits he doesn't want to go. He fights the case aide to get into the car. But once he's in the car, he's fine. So he knows where he's going, he's fine when he's there, but he doesn't want to go.

*Id.* Ultimately, Ms. Weirich opined that it would be in Child's best interest to terminate Mother's parental rights. *Id.*

Thus, the record confirms that Child is bonded with his pre-adoptive foster parents. While Child has a relationship with Mother, he is resistant to attending visits and does not appear to have a parent/child bond with her. It was within in the discretion of the orphans' court to conclude that Child will not suffer any detriment if his relationship with Mother is ended, and that terminating Mother's parental rights will best serve Child's needs and welfare.

Accordingly, our independent review of Mother's issue demonstrates that it does not entitle her to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel.[7] *See Flowers*,

---

[7] "When a *pro se* or counseled brief has been filed within a reasonable amount of time, … the Court should then consider the merits of the issues contained therein and rule upon them accordingly." *Commonwealth v. Baney*, 860 A.2d 127, 129 (Pa. Super. 2004). In her *pro se* response, Mother claims that she "did not get a chance to talk" at the hearing. Response, 7/26/2017. Additionally, she states that her witnesses and Child's father did not get "a chance to talk either." *Id*. However, Mother

*(Footnote Continued Next Page)*

113 A.3d at 1250.  We therefore grant counsel's application for leave to withdraw, and we affirm the November 22, 2016 order and decree.

Application for leave to withdraw granted.  Order and Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2017

_(Footnote Continued)_ ──────────────

testified at the hearing, **see** N.T. , 11/21/2016, at 137-49, and her attorney indicated that Mother was the only witness she wished to call, **see id**. at 137, 150.  Thus, we conclude that there is no additional non-frivolous issue to consider on appeal.